Wendy **DRANKWATER,** Plaintiff,

v.

Arnold **MILLER and Matrix Essentials, Inc.,** Defendants.

No. 92 Civ. 6212 (SWK).

United States District Court, S.D. New York.

July 30, 1993.

Beldock Levine & Hoffman, New York City, by Cynthia Rollings, for plaintiff.

Baker & Hostetler, Cleveland, OH, by Earl M. Leiken, Brief Kesselman & Knapp, New York City, for defendants.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this diversity action involving claims of tortious interference with a contract, intentional infliction of emotional distress, negligent infliction of emotional distress and unlawful discrimination under § 296 of the New York Human Rights Law, defendants Arnold Miller ("Miller")[1] and Matrix Essentials, Inc., ("Matrix") (collectively "defendants") move, pursuant to Rule 19 of the Federal Rules of Civil Procedure, for an order dismissing the complaint on the ground that plaintiff Wendy Drankwater ("Drankwater") failed to join an indispensable party whose presence divests this court of diversity jurisdiction. Specifically, defendants contend that (1) plaintiff's employer, Emiliani of New York, Inc. ("Emiliani"),[2] is a party that

---

1. Miller is now deceased. The parties have agreed, by stipulation, to substitute the Estate of Arnold Miller as a defendant in this action.

2. The actual identity and state of incorporation of Drankwater's employer is disputed. Drankwater maintains that her employer was Emiliani Barber & Beauty Supply, Co. Inc., as indicated on Drankwater's employment agreement, *see* Affidavit of Wendy Drankwater ("Drankwater Aff."), sworn to on April 30, 1993, at ¶¶ 2–4, which is not a New York corporation. On the evidence presented, however, the Court finds that Emiliani of New York, Inc., which is a New York corporation, was Drankwater's employer.

While it is true that there are two distinct Emiliani companies: Emiliani Supply, Co., Inc., a New Jersey corporation; and Emiliani of New York, Inc., a New York corporation, *see* Affidavit of Dominick Emiliani ("Dominick Aff.") sworn to on May 27, 1993, at ¶ 2, the evidence makes clear that Drankwater's employer was Emiliani of New York, Inc., the New York corporation. First, it is undisputed that Drankwater sold Matrix products to various beauty salons throughout the New York area. Only Emiliani of New York, Inc. had a distribution agreement with Matrix Essentials, Inc., that allowed it to sell Matrix products in the New York City area. *See* Dominick Aff. at ¶ 3. Second, Drankwater's commissions were paid by Emiliani of New York, Inc., as

should be joined if feasible; (2) Emiliani is a New York Corporation whose joinder would defeat diversity;[3] and (3) this court cannot proceed in equity and good conscience pursuant to Rule 19(b) in the employer's absence. Drankwater opposes the motion. For the reasons set forth below, defendants' motion to dismiss the complaint for failure to join an indispensable party is denied.

## BACKGROUND [4]

Drankwater entered into an employment contract with Emiliani in January of 1990. At that time, Emiliani had a distribution contract with Matrix whereby Emiliani sold Matrix beauty products to beauty salons in New York. Drankwater was hired as a sales consultant to Emiliani and was responsible for selling Matrix products to various beauty salons throughout the County of New York.

Drankwater alleges that during her employment at Emiliani, Miller, the majority shareholder and Chief Executive Officer of Matrix, made various sexual advances and suggestions to her beginning with their first meeting in August 1990 and continuing until August 1991. Miller and Drankwater first met at a national sales meeting of Matrix sales representatives in Reno, Nevada. While there, Drankwater won an automobile in a raffle sponsored by Matrix. Complaint at ¶ 8. In November 1990, Miller met Drankwater again at a sales meeting at the Emiliani office in Union, New Jersey, and he asked her to "give him a ride in the car she had won." *Id.* at ¶ 9. That evening, Miller called Drankwater at home and made "lewd, improper, and unlawful statements to her" that allegedly constituted sexual harassment. *Id.* at ¶ 10. Drankwater did not consent to the statements and responded negatively to them. *Id.* In March 1991, Miller met Drankwater again at a trade show at the Jacob Javits Center in New York City. Again, he allegedly made comments to her

that constituted sexual harassment, and again, Drankwater did not consent and responded negatively to his remarks. *Id.* at ¶ 11. Drankwater further alleges that as a result of her refusal to accept these advances, Miller "instructed, advised and/or requested" Drankwater's superiors at Emiliani to terminate her employment. *Id.* at ¶ 14. On August 20, Drankwater was terminated by Emiliani. *Id.* at ¶ 15. Drankwater claims that her dismissal was "wrongful and without legitimate cause or justification." *Id.* at ¶ 16.

Based on the foregoing facts, Drankwater sues defendants for (1) tortious interference with a contract, alleging that as a result of her refusal to accept Miller's advances, defendants willfully induced Emiliani to terminate Drankwater's employment contract, *Id.* at ¶ 22; (2) intentional infliction of emotional distress, alleging that defendants abused their position of actual or apparent power and engaged in a course of extreme and outrageous conduct that knowingly caused Drankwater emotional distress, *Id.* at ¶ 25; (3) negligent infliction of emotional distress, on the ground that defendants breached the special duty owed to Drankwater arising from the special relationship between defendants and Drankwater, *Id.* at ¶¶ 28–29; (4) aiding, abetting, inciting, encouraging, or coercing Emiliani to engage in wrongful discrimination, namely, to terminate Drankwater's employment contract based on her sex and in retaliation for her refusal to accept Miller's advances. *Id.* at ¶ 32.

Defendants now move to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 19, for failure to join an indispensable party. Defendants argue that the complaint should be dismissed on the grounds that: (1) Emiliani is a party to be joined if feasible; (2) Emiliani cannot be joined in this action because diversity jurisdiction would be defeated; and (3) the court

evidenced by her pay stubs from that company and her W–2 form. *See* Appendices "A" and "B," attached to Dominick Aff. Third, Drankwater was supervised by Emiliani of New York, Inc.'s employees during the relevant time period. *See* Dominick Aff. at ¶ 6. Accordingly, the Court finds that Emiliani of New York, Inc., a New York corporation, was Drankwater's employer.

3. Subject matter jurisdiction in this case is based on diversity of citizenship, and because both Drankwater and Emiliani are citizens of New York, diversity would be defeated if Emiliani were joined.

4. The following facts are taken from the Complaint and affidavits submitted by both parties.

cannot proceed in equity and good conscience in Emiliani's absence.[5]

In response, Drankwater claims that Emiliani is not a necessary or indispensable party, but rather a permissive party whose joinder is regulated by Federal Rule of Civil Procedure 20. This claim is based on Drankwater's assertion that Emiliani and defendants are joint tortfeasors who need not be joined in a single lawsuit as their liability is joint and several. *See Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990) (error to label joint tortfeasors indispensable). In the alternative, Drankwater argues that defendants fail to satisfy the dictates of Rule 19.

## DISCUSSION

■ Rule 19 of the Federal Rules of Civil Procedure [6] sets forth a two-step inquiry for determining whether an action must be dismissed for failure to join an indispensable party. *See Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir.1990). The first prong focuses on whether the parties should be joined if feasible. Specifically, Rule 19(a) provides, in relevant part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence

complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest....

Under the second prong, Rule 19(b), a court must determine whether it can proceed in equity and good conscience without that party. Fed.R.Civ.P. 19(b). Unless Rule 19(a)'s threshold standard is met, however, the court need not consider whether dismissal under Rule 19(b) is warranted. *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir.1990).

■ As a general rule, in determining whether a party is indispensable, the preference is for non-dismissal. The Second Circuit has stated that, "very few cases should be terminated due to the absence of non-diverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." *Jaser v. New York Property Ins. Underwriting Assoc.*, 815 F.2d 240, 242 (2d Cir. 1987). Therefore, Rule 19 should be applied narrowly.

---

**5.** Although defendants do not move to dismiss any of Drankwater's causes of action, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, upon consideration of the facts alleged, the Court finds Drankwater's negligent infliction of emotional distress claim deficient. A cause of action for negligent infliction of emotional distress arises only in unique circumstances, when a defendant owes a special duty to the plaintiff, *see Cucchi v. New York City Off–Track Betting Corp.*, 818 F.Supp. 647 (S.D.N.Y.1993) (citing *Kelly v. Chase Manhattan Bank*, 717 F.Supp. 227, 235 (S.D.N.Y.1989)), or where there is proof of a traumatic event that caused the plaintiff to fear for her own safety. *Id.* (citing *Ford v. Village Imports, Ltd.*, 92 A.D.2d 717, 461 N.Y.S.2d 108, 108 (1983)). In this case, Drankwater merely alleges that there was a special relationship between plaintiff and defendants, whereby defendants owed a special duty to Drankwater. Complaint at ¶ 28. There are no allegations, however, as to the basis for the special relationship or the special duty. Nor are

there allegations that defendants owed the special duty only to Drankwater. Accordingly, the Court dismisses this claim *sua sponte* pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**6.** As indicated, Drankwater asserts that Emiliani and defendants are joint tortfeasors, and therefore, need not be joined in a single proceeding. The Court disagrees. Defendants cannot be joint tortfeasors with Emiliani with respect to Drankwater's tortious interference with contractual relations claim or her intentional infliction of emotional distress claim because the Court finds that any companion claim against Emiliani would have to be based on breach of contract. The tort claims, as they now stand before the Court, cannot apply to Emiliani. In addition, Drankwater provides no support for her assertion that the violation of the New York Human Rights Law is to be considered a tort-type claim. Thus, Rule 19 governs joinder of Emiliani in this case.

## A. Rule 19(a)(1)

 In this case, defendants contend that unless Emiliani is made a party to this action, "complete relief cannot be accorded among those already parties." *See* Fed. R.Civ.P. 19(a)(1). According to defendants, the alleged harm to Drankwater stems from wrongful termination. As neither Miller nor Matrix was her employer, however, neither has the power to reinstate her to her former position. Thus, defendants contend that the Court is unable to consider the full range of available remedies or grant complete relief. The Court disagrees.

A review of Drankwater's complaint against Miller and Matrix indicates that she seeks only monetary damages. Complaint at 7–8. Therefore, the inability to order reinstatement does not preclude the Court from awarding complete relief. As the Second Circuit recognizes, "[t]he term complete relief refers only 'to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought.'" *Arkwright–Boston Mfr. Mut. Ins. Co. v. New York,* 762 F.2d 205, 209 (2d Cir.1985) (*quoting* 3A J. Moore, *Moore's Federal Practice* ¶ 19.07–1[1], at 19–96 (2d ed. 1984)). Thus, the Court need only consider the money damages requested in the complaint and need not concern itself with other remedies that might be available if Emiliani were joined.

## B. Rule 19(a)(2)(i) [7]

 Pursuant to Rule 19(a)(2)(i), a person shall be joined if "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest." Defendants contend that if Emiliani is not made a party to the instant action, its ability to protect its interest in other future litigations will be impaired. Specifically, defendants contend that because a disposition of the instant case against Miller and Matrix requires a determination as to whether Drankwater's discharge by Emiliani was based on sex discrimination, Emiliani's interests in other litigations may be impaired. Defendants point out in their brief that Drankwater has already filed a claim with the Equal Employment Opportunity Commission ("EEOC") against Emiliani, and may file a suit against Emiliani under the New York Human Rights Law at a later date. *See* Defendant's Memorandum of Law in Support of Motion ("Def. Mem."), at 8–9. Further, Drankwater may instigate an action against Emiliani for negligent or intentional infliction of emotional distress. Defendants argue that a determination against defendants in this case necessarily results in a determination that Emiliani terminated Drankwater because of sex discrimination; with such a factual finding on the record, Emiliani would suffer the effects of "negative precedent," and its ability to defend itself in any one of these potential suits would be impaired.

Some courts have held that establishment of "negative precedent" can provide the requisite prejudice to the absent party under Rule 19(a)(2). *See Pulitzer–Polster v. Pulitzer,* 784 F.2d 1305 (5th Cir.1986); *Spiro v. Parker Bros.,* 1992 WL 197405 (S.D.N.Y. Aug. 4, 1992).

In *Spiro,* the plaintiffs were 75% part owners of a copyright in a game manufactured and distributed by Parker Brothers. The plaintiffs sued Parker Brothers for not using best efforts to market the product and for not producing royalties. When Parker Brothers moved for dismissal of the action for failure to name the other part owners of the copyright (the owners of the remaining

---

7. Drankwater argues that Emiliani has not asserted an interest in this case, and therefore, defendants cannot satisfy this prong. Specifically, Drankwater claims that if a disposition in favor of plaintiff and against defendants would somehow implicate Emiliani, posing a substantial risk of impairment of Emiliani's ability to protect its interest, one would assume that Emiliani would seek to intervene. The fact that Emiliani has not sought to intervene bespeaks its choice to take the risk of an adverse judgment. Drankwater has cited no authority for the proposition that the absent party need try to intervene in order to establish an "interest" in the action. Moreover, the Court is aware of no support for such a proposition. It is enough if the movants can demonstrate that disposition without the absent party will impair or impede that party's interest in future litigations.

25% interest), the court held that the minority owners were necessary parties to be joined if feasible. *Spiro v. Parker Bros.,* 1992 WL 197405 at \* 1. According to the court, disposition of the action without the minority owners could impair their ability to protect their 25% interest as a successful defense by Parker Brothers could have an adverse precedential effect on any subsequent claims by the absent parties. *Id.* at \* 1.

In this case, however, the Court does not find the "negative precedent" argument compelling. In *Spiro,* the only distinction between the 75% interest holders and the 25% interest holders was the stake in the copyright. Thus, the exact same contentions would be advanced in a suit between the 75% interest holders (plaintiffs) and Parker Brothers as would be advanced in a suit between the 25% interest holders (absent parties) and Parker Brothers. The causes of action would be exactly the same as would the facts to be established.

Here, however, Drankwater's causes of action against Miller and Matrix are essentially tort claims, whereas Drankwater's causes of action against Emiliani would arise from breach of the employment contract. Thus, the action between Drankwater and Emiliani would be substantially different from the instant action and the weight of negative precedent less forceful. Furthermore, as to Emiliani's ability to protect himself from negative precedent in a subsequent case against Miller and Matrix (*Emiliani v. Miller and Matrix*), defendants do not specifically articulate, and the Court cannot speculate, what causes of action Emiliani might assert against Miller and Matrix.

Moreover, while it may be true that a court in a later litigation may consider an earlier finding, it is plain that a prior finding would not be binding upon Emiliani since Emiliani was not a party to the instant action. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 327, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Thus, the Court finds the "negative precedent" argument unpersuasive and insufficient alone to support a finding that Emiliani should be joined if feasible.

**C. Rule 19(a)(2)(ii)**

Rule 19(a)(2)(ii) provides that joinder is necessary where "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may ... (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest...." With respect to this provision, defendants contend that unless Emiliani is named a party to this action, they face a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. Specifically, the defendants are concerned that at some future time, Drankwater may sue Emiliani, and Emiliani may file a third party complaint against defendants, claiming generally "that if any unlawful discrimination took place, Matrix and Miller are responsible." Def. Mem. at 12. Were defendants exonerated in this action, a finding against them in this potential, future suit would subject them to inconsistent liabilities.[8] Def. Mem. at 12. Further, even if Drankwater "is successful in establishing in this action that such discrimination occurred and that Mr. Miller or Matrix participated in such discrimination," Def. Mem. at 12, it might be determined in a subsequent action against Emiliani that Drankwater's termination was for legitimate reasons and no sex discrimination occurred, again subjecting defendants to inconsistent liabilities. *Id.* at 12.

The Court finds these scenarios excessively speculative. *See Federal Deposit Ins. Corp. v. Home Sav. Bank,* 1993 WL 41818 (E.D.N.Y. Feb. 9, 1993) (Court rejects movants' argument that a potential, future suit with a potential, consequent third party action places movants at "direct and substantial risk of multiple, inconsistent obligations" because argument is "speculative at best"). At

---

8. Defendants would be unable to assert collateral estoppel against Emiliani as their defense, because Emiliani would not have been a party to the suit in which that decision was rendered. *See Parklane Hosiery Co. v. Shore,* 439 U.S. at 327, 99 S.Ct. at 649 ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard.").

this point, no other suit is pending by Drankwater against Emiliani; thus, there is no present danger that Emiliani will file a third party complaint against defendants or that there will be an inconsistent determination in an action between Drankwater and Emiliani. Although Drankwater has an administrative claim pending with the EEOC in New Jersey, there is the possibility that the matter will be resolved by the EEOC and Drankwater will never sue Emiliani in state or federal court. In addition, Emiliani's assertions in the EEOC action so far indicate no basis on which to sue defendants. For example, in the EEOC investigation, Emiliani contended that Drankwater was terminated because she violated company policy by "selling to non-legitimate salons." *Drankwater v. Emiliani,* EEOC Probable Cause Determination, Charge No. 171920195, at 1 (May 27, 1993). Emiliani made no mention of interference, contribution or coercion by defendants. Although Emiliani is in no way bound by such statements, the Court finds that the risk that defendants will incur multiple or inconsistent obligations is not substantial.

Accordingly, the Court finds that defendants have not met their burden of showing that Emiliani is a party to be joined if feasible pursuant to Rule 19(a). Having determined that Rule 19(a)'s threshold standard has not been met, there is no need to consider the jurisdiction issue or to undertake an analysis to determine whether the court can proceed in equity and good conscience in Emiliani's absence. Defendants' motion to dismiss for failure to join an indispensable party is denied.

## CONCLUSION

For the reasons set forth above, defendants' motion, pursuant to Rule 19 of the Federal Rules of Civil Procedure, for an order dismissing the complaint for failure to join an indispensable party, is denied. The parties shall appear for a pre-trial conference on Friday, September 10, 1993, at 10:30 a.m.

SO ORDERED.