[No. B125877. Second Dist., Div. One. Jan. 29, 1999.]

COUNTRYWIDE HOME LOANS, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
HP LEMONA II et al., Real Parties in Interest.

**COUNSEL**

Tuttle & Taylor, Douglas W. Beck and John R. Dent for Petitioner.

No appearance for Respondent.

M. Bruce Roberts; Michael A. Hoberman; Scott Z. Adler; Randolph & Levanas, Michael I. Levanas; and John E. Carlson for Real Parties in Interest.

## OPINION

**MASTERSON, J.**—This case presents the question of whether, under the rules governing the joinder of parties, a trial court can require a plaintiff to sue *all* of the participants in an alleged scheme to defraud even though the plaintiff wants to sue only some of them. Plaintiff contends that it can choose which tortfeasors to sue. We agree.

### BACKGROUND

Plaintiff Countrywide Home Loans, Inc., is a mortgage banker in the business of originating, purchasing, selling, and servicing mortgage loans. As part of its business, Countrywide purchases loans from correspondent lenders and resells them on the secondary market. Countrywide does not hold such loans in its own portfolio, except for the limited time between purchasing a loan from a correspondent lender and reselling the loan to an investor.

In the mid-1990's, Countrywide purchased loans from Keros Mozilo Mortgage Bankers (Keros Mozilo) for resale in the secondary market. The loans were made in connection with the sale of units in three condominium projects. On or about October 24, 1997, Countrywide filed this action, alleging that several persons had perpetrated a fraudulent scheme in obtaining the loans. The complaint describes a "builder bailout" scheme, as follows.

Because the condominiums were built during a falling real estate market, the sales prices would not cover development costs. In order to recoup those expenses, the developers conspired with brokers, escrow officers, borrowers, and a real estate appraiser so that the borrowers could obtain loans at artificially inflated prices. Those prices were based in part on overvalued appraisals and false information about the borrowers that made them look more creditworthy.[1]

As the original lender, Keros Mozilo funded the loans to the borrowers, each of whom executed a promissory note in favor of Keros Mozilo, secured by a deed of trust on the property. Keros Mozilo relied on the misrepresentations of the developers and the other conspirators in making the loans. Eventually, Keros Mozilo sold the loans to Countrywide, which in turn

---

[1]The complaint alleges that the loans were obtained by using unsupported, inflated property appraisals, which resulted in understated loan-to-value ratios. The false information about the borrowers included fabricated tax returns, employment data, and assets.

resold them to investors. As a result of the fraudulent scheme, Countrywide sustained substantial losses because it had to repurchase the loans from the investors. In addition, many of the loans were in default or foreclosure while others, though current, were of impaired value in the secondary market.

By agreement dated May 31, 1996, Keros Mozilo assigned to Countrywide all of its rights and interests arising out of the loan transactions. Countrywide filed this action in its own capacity and as the successor in interest to Keros Mozilo. In a first amended complaint, filed on April 24, 1998, Countrywide asserted various tort claims against the developers (including their principals and constituent partners), the brokers, the escrow officers, and the real estate appraiser. More specifically, Countrywide alleged causes of action for fraud, negligent misrepresentation, and general negligence. Although Keros Mozilo and the individual borrowers were mentioned in the amended complaint, they were not sued. In the prayer for relief, Countrywide requested general and exemplary damages.

The developers and the real estate appraiser filed demurrers to the first amended complaint, contending that the pleading was uncertain (see Code Civ. Proc., § 430.10, subd. (f)) and that there was a defect in the joinder of parties because Keros Mozilo and the borrowers were not named as defendants (see *id.*, subd. (d)). Countrywide filed an opposition to the demurrers. Both sides appeared at the hearing on the matter.[2]

By order dated August 28, 1998, the trial court sustained the demurrers with 30 days' leave to amend. On the issue of joinder, the trial court concluded that "[p]laintiff's failure to name the borrowers as Defendants has resulted in a defect or misjoinder of parties. Plaintiff has not joined parties, who, under the allegations of the [first amended complaint], appear to have been active participants in the alleged fraud. . . . [¶] . . . The court deems these non-parties necessary." The trial court also found that "[p]laintiff's failure to name Keros-Mozilo as a Defendant has resulted in a defect or misjoinder of parties. Plaintiff alleged it purchased most of the loans from Keros-Mozilo. Plaintiff sues DOES 21 through 30 as the agents of Keros-Mozilo but has failed to join Keros-Mozilo." On the issue of the complaint's uncertainty, the trial court ruled that all of the causes of action were deficient, stating that "[d]efendants are entitled to know who said what to whom and in what capacity."

On September 29, 1998, Countrywide filed a petition for a writ of mandate with this court, challenging the trial court's ruling on the joinder of

---

[2]For convenience, we will refer to the developers and the real estate appraiser as "defendants."

parties. The petition did not seek review of the trial court's ruling that the claims were uncertain. On October 7, 1998, we issued an order to show cause why the trial court's ruling should not be vacated. We also established a briefing schedule and calendared the matter for oral argument. Having considered the parties' oral and written presentations, we now consider the merits of the petition.

## DISCUSSION

■ In reviewing the ruling on a demurrer, " '[w]e treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed.' . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58], citations omitted.)

Joinder of parties is governed by section 389 of the Code of Civil Procedure (section 389). Subdivision (a) of section 389 provides: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties *or* (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest *or* (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. . . ." (Italics added.) ■ A person joined as a party pursuant to this provision is deemed a "necessary" party. (*People* ex rel. *Lungren* v. *Community Redevelopment Agency* (1997) 56 Cal.App.4th 868, 876-879 [65 Cal.Rptr.2d 786].)[3]

■ In its current form, section 389 tracks the language of its federal counterpart, rule 19 of the Federal Rules of Civil Procedure (28 U.S.C.).

---

[3]Section 389 also states: "If a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; [and] (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder. . . ." (Code Civ. Proc., § 389, subd. (b).) This provision addresses the treatment of "indispensable" parties. (*People* ex rel. *Lungren* v. *Community Redevelopment*

(See Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc. (1973 ed.) § 389, pp. 221-223.)[4] "It is therefore appropriate to use federal precedents as a guide to application of the statute." (*Conrad* v. *Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 237, 241 [120 Cal.Rptr. 803]; accord, *County of San Joaquin* v. *State Water Resources Control Bd.* (1997) 54 Cal.App.4th 1144, 1152 [63 Cal.Rptr.2d 277]; see generally, 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 161-164, 168, pp. 218-222, 227-228.)

■ Typically, when a demurrer has been sustained, we review the trial court's ruling for an abuse of discretion. (See *Harboring Villas Homeowners Assn.* v. *Superior Court* (1998) 63 Cal.App.4th 426, 428 [73 Cal.Rptr.2d 646].) Nevertheless, Countrywide contends that, in accordance with federal cases involving the joinder of parties, we should review the trial court's decision de novo. (See, e.g., *Gwartz* v. *Jefferson Memorial Hosp. Ass'n* (8th Cir. 1994) 23 F.3d 1426, 1428; *Western Maryland Ry. Co.* v. *Harbor Ins. Co.* (D.C. Cir. 1990) 910 F.2d 960, 963, fn. 6 [285 App.D.C. 460].) Defendants, on the other hand, argue for an abuse of discretion standard, which also finds support among the federal courts. (See, e.g., *Tell* v. *Trustees of Dartmouth College* (1st Cir. 1998) 145 F.3d 417, 418-419; *Keweenaw Bay Indian Community* v. *State* (6th Cir. 1993) 11 F.3d 1341, 1346; cf. *People* ex rel. *Lungren* v. *Community Redevelopment Agency, supra,* 56 Cal.App.4th at p. 875.) We find it unnecessary to resolve this issue because we would reach the same result under either standard. (See *North Shore Gas Co.* v. *Salomon Inc.* (7th Cir. 1998) 152 F.3d 642, 648.)

■ In deciding whether Keros Mozilo and the borrowers are necessary parties, we analyze the three distinct parts, or clauses, of section 389, subdivision (a). "Clause (1) stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court. The interests that

---

*Agency, supra,* 56 Cal.App.4th at pp. 879-885.) Like the trial court, we do not decide whether Keros Mozilo and the borrowers are indispensable parties—those without whom the action cannot proceed. Rather, the question before us is whether they are necessary parties—those who must be joined *if feasible.* (See 4 Moore's Federal Practice (3d ed. 1998) §§ 19.02[1]-19.02[2][d], pp. 19-9 to 19-17.)

[4]The federal rule provides: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. . . ." (Fed. Rules Civ.Proc., rule 19(a), 28 U.S.C.)

are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter. Clause (2)(i) recognizes the importance of protecting the person whose joinder is in question against the practical prejudice to him which may arise through a disposition of the action in his absence. Clause (2)(ii) recognizes the need for considering whether a party may be left, after the adjudication, in a position where a person not joined can subject him to a double or otherwise inconsistent liability." (Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc., *supra*, § 389, p. 224.)

In general, section 389, subdivision (a), mandates that, "[w]henever feasible, the persons materially interested in the subject of an action . . . should be joined as parties so that they may be heard and a complete disposition made." (Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc., *supra*, § 389, p. 223; see *Bank of California* v. *Superior Court* (1940) 16 Cal.2d 516, 523 [106 P.2d 879].) But courts should "be careful to avoid converting [section 389 from] a discretionary power or a rule of fairness . . . into an arbitrary and burdensome requirement which may thwart rather than accomplish justice." (*Bank of California, supra,* 16 Cal.2d at p. 521.) With these principles in mind, we turn to the language of the statute.

## A.  *Ability to Award Complete Relief*

Under clause (1) of section 389, subdivision (a), Keros Mozilo and the borrowers should be joined as defendants if, in their absence, "complete relief cannot be accorded among those already parties." (§ 389, subd. (a), cl. (1).) As stated, Countrywide seeks to recover general and exemplary damages.[5]

The "complete relief" clause "requires joinder when nonjoinder precludes the court from effecting relief not in some overall sense, but

---

[5]At this stage of the proceedings, we focus on the allegations of the first amended complaint to determine whether Keros Mozilo and the borrowers are necessary parties. (See *Union Carbide Corp.* v. *Superior Court* (1984) 36 Cal.3d 15, 23-24 [201 Cal.Rptr. 580, 679 P.2d 14]; *Harboring Villas Homeowners Assn.* v. *Superior Court, supra,* 63 Cal.App.4th at p. 430; 4 Moore's Federal Practice, *supra,* § 19.02[4][b][iii], p. 19-27.) In that regard, we note that " '. . . [a] joinder question should be decided with reasonable promptness, but decision may properly be deferred if adequate information is not available at the time. Thus the relationship of an absent person to the action, and the practical effects of an adjudication upon him and others, may not be sufficiently revealed at the pleading stage; in such a case it would be appropriate to defer decision until the action was further advanced. . . .' " (*Union Carbide Corp., supra,* 36 Cal.3d at p. 22.)

between *extant parties*. In other words, joinder is required only when the absentee's nonjoinder precludes the court from rendering complete justice *among those already joined*. . . . Properly interpreted, [the 'complete relief' clause] is not invoked simply because some absentee may cause future litigation. The effect of a decision in the present case on the absent party is immaterial under the 'complete relief' clause. The fact that the absentee might later frustrate the outcome of the litigation does not by itself make the absentee necessary for complete relief. The 'complete relief' clause does not contemplate other potential defendants, or other possible remedies." (4 Moore's Federal Practice, *supra*, § 19.03[2][b][ii], pp. 19-39 to 19-41, fns. omitted, italics in original.) Simply put, "the term complete relief refers only 'to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought.' " (*Arkwright-Boston Mfrs. Mut.* v. *City of New York* (2d Cir. 1985) 762 F.2d 205, 209.)

█ Assuming that Countrywide prevails in this action, its damages can be ascertained, and judgment can be rendered even if Keros Mozilo and the borrowers are not parties. It follows that their joinder is not necessary to accord Countrywide "complete relief." (See *Drankwater* v. *Miller* (S.D.N.Y. 1993) 830 F.Supp. 188, 192; *Atlantic Aero, Inc.* v. *Cessna Aircraft Co.* (M.D.N.C. 1981) 93 F.R.D. 333, 334.)

█ Further, "[i]t is relatively rare for a court to invoke the 'complete relief' clause as its *sole* basis for finding an absentee necessary. Instead, most cases seem to use the clause in conjunction with at least one of the other bases of compulsory party joinder[, i.e., where nonjoinder may harm the interests of an absentee or expose an existing party to multiple liability]." (4 Moore's Federal Practice, *supra*, § 19.03[2][c], p. 19-43, fn. omitted, italics in original.) That is not the case here. (See pt. B, *post*.)[6]

█ Moreover, the borrowers allegedly participated with defendants in the fraudulent scheme. That participation puts the borrowers beyond the reach of section 389: It is well settled that "[j]oint tortfeasors are not necessary to afford complete relief." (4 Moore's Federal Practice, *supra*,

---

[6]Courts are more likely to apply the "complete relief" clause in two situations: (1) where a plaintiff brings a direct action against an excess insurer without joining the insured or the insured's primary carrier; and (2) where an absentee's participation is required to provide injunctive relief to an existing party. (4 Moore's Federal Practice, *supra*, § 19.03[2][c], p. 19-43.) We are not faced with either situation.

§ 19.03[2][d], p. 19-45; accord, *Intercept Sec. Corp.* v. *Code-Alarm, Inc.* (E.D.Mich. 1995) 164 F.R.D. 215, 217-218.)[7]

Thus, Countrywide can be accorded "complete relief" without the joinder of Keros Mozilo and the borrowers.

## B. *Potential Harm of Nonjoinder*

Clause (2) of section 389, subdivision (a), requires joinder, if feasible, where an absentee claims an interest relating to the subject of the action, and nonjoinder could pose a risk of harm to the absentee or an existing party. We first examine this clause as it relates to potential harm to Keros Mozilo and the borrowers. We then discuss whether the nonjoinder of Keros Mozilo and the borrowers might prejudice defendants.

### 1. *Harm to Nonjoined Persons*

Under clause (2)(i), absentees should be joined if they claim an interest relating to the subject of the action, and the disposition of the action, in their absence, could "impair or impede" their ability to protect that interest. (§ 389, subd. (a), cl. (2)(i).) Plainly, Keros Mozilo does not, and cannot, claim that any of its interests might be harmed by the litigation; it has assigned all of its rights and interests in the loan transactions to Countrywide.

Nor are the borrowers' interests likely to be harmed. For one thing, the borrowers do not appear to have any interests at stake that could be "directly and immediately" impacted by the outcome of the case. (See 4 Moore's Federal Practice, *supra*, § 19.03[3][b], pp. 19-46 to 19-49.) Even as to the borrowers who still own their condominiums, a judgment in this action, regardless of who prevails, would not directly and immediately affect their interests. If Countrywide prevails, defendants will have to satisfy a money judgment. If defendants prevail, Countrywide will recover nothing. Either way, the borrowers' interests are not sufficiently affected, if at all.

In addition, given that the borrowers allegedly participated in the scheme to defraud, they would certainly welcome an outcome favorable to defendants, i.e., a determination that there was no fraudulent scheme. Our review of the record indicates that defendants will present an adequate, if not vigorous,

---

[7]The first amended complaint does not allege that Keros Mozilo engaged in any wrongdoing. In fact, Countrywide alleges that Keros Mozilo fell victim to defendants' misrepresentations.

defense. To the extent that the borrowers and defendants share the same goal with respect to the outcome of the litigation, the borrowers' interests are less likely to be impaired or impeded. (See *Citizens Assn. for Sensible Development of Bishop Area* v. *County of Inyo* (1985) 172 Cal.App.3d 151, 161 [217 Cal.Rptr. 893]; *North Shore Gas Co.* v. *Salomon Inc., supra,* 152 F.3d at p. 648.)[8]

Accordingly, joinder is not required to protect any interests of Keros Mozilo or the borrowers.

### 2. *Harm to Existing Parties*

Finally, we decide whether Keros Mozilo and the borrowers should be joined as parties in order to protect defendants. ■ Under clause (2)(ii) of section 389, subdivision (a), joinder would be required if, in the absence of Keros Mozilo and the borrowers, the action would expose defendants to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." (§ 389, subd. (a), cl. (2)(ii).) "[A] 'substantial risk' means more than a theoretical possibility of the absent party's asserting a claim that would result in multiple liability. The risk must be substantial as a practical matter." (*Union Carbide Corp.* v. *Superior Court, supra,* 36 Cal.3d at p. 21.)

■ Because Keros Mozilo has assigned all of its rights and interests to Countrywide, there is virtually no risk that it will pursue a claim against defendants.

With regard to the borrowers, their status as alleged joint tortfeasors makes their joinder unnecessary. ■ "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." (*Temple* v. *Synthes Corp.* (1990) 498 U.S. 5, 7 [111 S.Ct. 315, 316, 112 L.Ed.2d 263], interpreting Fed. Rules Civ.Proc., rule 19.) As the legislative history of section 389 indicates, the "definition of persons to be joined is not couched in terms of the abstract nature of their interests—'joint,' '[u]nited,' 'separable,' or the like. . . . It should be noted particularly . . . that the description is not at variance with the settled authorities holding that a tortfeasor with the usual 'joint-and-several' liability is merely a *permissive* party to an action against another with like liability. . . . Joinder of these tortfeasors continues to be regulated by . . . [sections 378 and 379 of the Code of Civil Procedure]." (Cal. Law Revision Com. com., 14 West's Ann.

---

[8]Our observation that the borrowers would prefer a defense verdict is not to say that they are in privity with defendants. Nor do we suggest that the existence of a common goal between an absentee and an existing party is of any significance outside the context of joinder of parties.

Civ. Proc. Code, *supra*, § 389, p. 224, italics added.) Sections 378 and 379 address the permissive joinder of plaintiffs and defendants, respectively. "Thus . . . the doctrine of joint and several liability precludes characterizing a likely defendant as a party necessary to the plaintiff's action . . . ." (*Singer Co.* v. *Superior Court* (1986) 179 Cal.App.3d 875, 892 [225 Cal.Rptr. 159].)[9]

As a leading treatise explains with respect to rule 19 of the Federal Rules of Civil Procedure: "The 'multiple liability' clause compels joinder of an absentee whose nonjoinder threatens a party with the risk of paying double or multiple obligations. . . . Joint tortfeasors are not necessary parties. . . . [T]he possibility that, in the absence of a joint tortfeasor, a defendant may be liable in the original action and lose a subsequent action for contribution against the joint tortfeasor is not the kind of . . . liability contemplated by the 'multiple liability' clause [of rule 19 of the Federal Rules of Civil Procedure] . . . . A defendant's potential loss in a subsequent suit for contribution against the absentee does not subject it to multiple liability under the compulsory party joinder rule . . . . [T]he defendant is in a position to avoid this harm by impleading the joint tortfeasor in the pending case. Indeed, potential contributors and indemnitors are not necessary precisely because impleader . . . protects the defendant . . . ." (4 Moore's Federal Practice, *supra*, § 19.03[4][e], pp. 19-61 to 19-62, fns. omitted; see *id.*, §§ 19.03[4][d], 19.06[2], pp. 19-59 to 19-60, 19-106 to 19-108.)

Of course, a third party cross-complaint is the California equivalent of federal impleader. (Compare Fed. Rules Civ.Proc., rule 14(a) 28 U.S.C., with Code Civ. Proc., §§ 428.10, 428.20.) In state court, "a defendant-indemnitee will simply join his indemnitor by cross-complaint [under sections 428.10 and 428.20 of the Code of Civil Procedure]." (Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc., *supra*, § 389, p. 224.)[10] As our Supreme Court recognized over 20 years ago, ". . . a defendant is generally authorized to file a cross-complaint against a concurrent tortfeasor for partial indemnity . . . even when such concurrent tortfeasor has not been named a defendant in the original complaint." (*American*

---

[9]Defendants argue that the borrowers are not joint tortfeasors and that, as a result, the borrowers may later bring a fraud action against them. However, since this case is at the pleading stage, we look to the allegations of the operative pleading in determining issues of joinder. (See fn. 5, *ante*.) The first amended complaint alleges that the borrowers participated with defendants in a scheme to defraud Keros Mozilo. Thus, for purposes of this proceeding, we assume that the borrowers and defendants are joint tortfeasors. In any event, we cannot say that there is a "substantial risk" that the borrowers will eventually sue defendants and expose them to multiple or inconsistent obligations.

[10]Together, sections 428.10 and 428.20 of the Code of Civil Procedure authorize the joinder of additional parties through a permissive cross-complaint.

*Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 607 [146 Cal.Rptr. 182, 578 P.2d 899].)

In sum, because the trial court can award complete relief without the joinder of Keros Mozilo and the borrowers, and because their absence as parties will not harm anyone's protectible interests, the trial court erred in sustaining the demurrers on the basis of nonjoinder.

Nothing in *De Stackelberg* v. *Lamb Transp. Co.* (1959) 168 Cal.App.2d 174 [335 P.2d 522] is to the contrary. That case involved personal injury litigation that arose out of a collision between a truck and a car. Lamb Transportation Company owned the truck, which, at the time of the accident, was being driven by its employee, Earl Robinson. The four occupants of the car sued Lamb Transportation in separate actions, relying on the doctrine of respondeat superior. Two of the plaintiffs also named Robinson as a defendant. The four actions were consolidated for trial. Thereafter, the two plaintiffs who had not named Robinson as a defendant moved to strike his answer, arguing that Robinson "had no right to intrude himself as a defendant by filing answers to complaints in which he was not joined as a party." (*Id.* at p. 180.) The trial court denied the motion.[11]

The Court of Appeal affirmed, noting that the pretrial conference order, which governed the consolidated actions, designated Robinson as a named defendant. As the court pointed out, the pretrial conference order superseded the parties' separate pleadings. (168 Cal.App.2d at p. 180.) Having concluded that Robinson was a proper party, the court then commented, in dictum, that "it would seem unquestionable that Lamb[, the employer,] could have compelled [Robinson's] joinder as a 'conditionally necessary party' under the provisions of section 389 of the Code of Civil Procedure." (*Ibid.*)

Defendants cite *De Stackelberg* for the proposition that section 389 compels the joinder of joint tortfeasors. Not so. *De Stackelberg*'s dictum was based on an earlier version of section 389, enacted in 1957, which provided: " 'A person . . . whose joinder would enable the court to determine *additional causes of action arising out of the transaction or occurrence involved in the action* is a conditionally necessary party. [¶] . . . [¶] When it appears that a conditionally necessary party has not been joined, the court shall order the party asserting the cause of action . . . to bring him in . . . .' "

---

[11]The motion to strike Robinson's answer was brought in an effort to obtain the testimony of his wife, who would have testified favorably to the plaintiffs. (168 Cal.App.2d at p. 180.) Under the marital privilege then in effect, if Robinson was a party to the litigation, his wife could not testify without his consent. (*Ibid.*; see generally, *Stein* v. *Superior Court* (1959) 174 Cal.App.2d 21 [344 P.2d 406].)

(Historical Note, 14 West's Ann. Code Civ. Proc., *supra*, § 389, p. 227, italics added; see Stats. 1957, ch. 1498, § 2, pp. 2824-2825.) Undoubtedly, a claim for contribution or indemnity "arises out of" the same transaction or occurrence as the plaintiff's claim. (See *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 849 & fn. 5 [92 Cal.Rptr. 179, 479 P.2d 379]; *Time for Living, Inc.* v. *Guy Hatfield Homes/All American Development Co.* (1991) 230 Cal.App.3d 30, 39 [280 Cal.Rptr. 904].) Arguably then, under the 1957 version of section 389, a defendant could compel a plaintiff to join other persons whose liability might be joint and several.

However, as stated, with regard to the current version of section 389, enacted in 1971, a tortfeasor "is merely a *permissive* party to an action against another with like liability[, and] . . . a defendant-indemnitee will simply join his indemnitor by cross-complaint." (Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc., *supra*, § 389, p. 224, italics added; see Stats. 1971, ch. 244, § 15, p. 376; accord, *Temple* v. *Synthes Corp.*, *supra*, 498 U.S. at p. 7 [111 S.Ct. at p. 316]; *Singer Co.* v. *Superior Court*, *supra*, 179 Cal.App.3d at p. 892; 4 Moore's Federal Practice, *supra*, § 19.03[4][e], p. 19-62.)

This interpretation is consistent with the comment of the California Law Revision Commission that "[s]ection 389 formerly attempted not only to avoid prejudice to the parties or absent person but also to promote the general convenience of the courts by preventing a multiplicity of suits. As revised, Section 389 takes a different approach; it limits compulsory joinder to those situations where the absence of a person may result in substantial prejudice to that person or to the parties already before the court. . . . Section 389 was widely criticized because it formerly appeared to require joinder of parties merely for the general convenience of the courts by preventing a multiplicity of suits." (Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc., *supra*, § 389, p. 222.)[12] In short, if defendants wish to reduce the likelihood of multiple lawsuits or to avoid any alleged prejudice, they need only file a cross-complaint against the borrowers.[13]

---

[12]This criticism was apparently unwarranted. (See Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc., *supra*, § 389, p. 222.)

[13]We reject defendants' somewhat contradictory contentions that the writ petition is both premature and moot. Defendants assert that the petition is premature because the trial court has not yet determined (and may never decide) whether the borrowers are indispensable parties. This assertion misses the mark. Countrywide has sought a writ of mandate because, under the trial court's ruling, it must incur the time and expense of suing persons it has no desire to sue. This burden exists regardless of whether the issue of indispensability ever arises. As for the claim of mootness, defendants state that, during the pendency of Country-wide's petition in this court, the trial court ordered Countrywide to name the borrowers as

## DISPOSITION

Let a peremptory writ of mandate issue, commanding respondent court to vacate its August 28, 1998, order to the extent that the order sustained the demurrers of real parties in interest on the ground of misjoinder of parties and to enter a new and different order overruling the demurrers on that ground. Countrywide Home Loans, Inc., is entitled to costs in connection with this proceeding.

Ortega, Acting P. J., and Vogel (Miriam A.), J., concurred.

---

defendants and to serve them with process. Even so, the petition is not moot. (See *Boccato* v. *City of Hermosa Beach* (1984) 158 Cal.App.3d 804, 808 [204 Cal.Rptr. 727].) The controversy before us involves more than the simple task of rewriting portions of a pleading or serving process. Not only does the trial court's order require that the borrowers be named as defendants and served with process, it also requires Countrywide to expend resources *in the future* in an attempt to establish the borrowers' liability.