[No. D060923. Fourth Dist., Div. One. Aug. 13, 2012.]

JAMES R. ARABIA, Plaintiff, Cross-defendant and Appellant, v.
BAC HOME LOANS SERVICING, L.P., Defendant, Cross-complainant and
Respondent.

464

**COUNSEL**

James R. Arabia, in pro. per., for Plaintiff, Cross-defendant and Appellant.

Bryan Cave, Lee Marshall, Aaron M. McKown, Paula L. Zecchini, Aileen Hunter and Stacey L. Herter for Defendant, Cross-complainant and Respondent.

**OPINION**

**HUFFMAN, Acting P. J.**—In this case, we are asked to determine if Code of Civil Procedure[1] section 725a prohibits a loan servicer from filing a judicial

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise specified.

foreclosure action in its name. We conclude it does not so long as the right to foreclose has been assigned to the loan servicer.

James R. Arabia refinanced his home with a mortgage loan secured by a deed of trust recorded against his home. Arabia experienced financial difficulties and stopped making his mortgage payments. Nonjudicial foreclosure proceedings were commenced and suspended numerous times. Arabia brought suit against the loan servicer, BAC Home Loans Servicing, L.P. (BAC), for claims arising out of the nonjudicial foreclosure attempts. In response, BAC filed a cross-complaint for judicial foreclosure.

The court granted BAC's motion for summary judgment on the judicial foreclosure cross-complaint and entered a decree authorizing foreclosure. Arabia appeals, contending that section 725a does not permit a loan servicer to bring a judicial foreclosure action in its name. He also claims the foreclosure decree includes improper provisions, and the court was required to add a junior lienholder as a cross-defendant in the judicial foreclosure action.

Because we conclude section 725a does not prohibit a loan servicer from initiating a judicial foreclosure action, we reject Arabia's challenge to the court's granting of BAC's motion for summary judgment. In addition, except for determining the judicial foreclosure decree improperly ordered Arabia to pay BAC rent, we otherwise affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

Arabia owns a home (the property) in San Diego. On or about September 12, 2005, Arabia refinanced the property with a $2,846,250 mortgage loan (the First Loan) from Countrywide Home Loans, Inc., doing business as America's Wholesale Lender (Countrywide). The First Loan was evidenced by a promissory note signed by Arabia in favor of Countrywide and secured by a deed of trust recorded against the property. The deed of trust included a clause authorizing Countrywide to foreclose on it if Arabia failed to make his monthly mortgage loan payments.

On or about September 12, 2005, Countrywide provided a home equity line of credit (HELOC) to Arabia in the amount of $1,035,000. It was evidenced by a home equity credit agreement and secured by a deed of trust recorded against the property. The HELOC was junior in priority to the First Loan.

On February 1, 2006, BAC, Countrywide, the Bank of New York Mellon formerly known as the Bank of New York (BONY), CWMBS, Inc., and other

entities entered into a pooling and servicing agreement (PSA). Under the PSA, Countrywide agreed to "sell[], transfer[], assign[], set[] over and otherwise convey[], without recourse, all of its respective right, title, and interest," in certain mortgage loans to CWMBS. CWMBS agreed to sell, transfer, assign, set over, and otherwise convey all rights, title, and interest in those same mortgage loans to BONY as trustee for the certificate holders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2006-TM 1 Mortgage Pass-Through Certificates, Series 2006-TMI (the Trust). The PSA further decreed that BAC would be the master servicer of all the loans in the Trust and had the authority to foreclose on deeds of trust securing loans that were in default.[2]

In 2007, Arabia experienced financial difficulties and was unable to make his mortgage loan payment on the First Loan in November 2007. Indeed, Arabia has not made a payment on the First Loan since October 2007.

On February 24, 2010, Countrywide, through its nominee Mortgage Electronic Registration Systems, Inc. (MERS), transferred its interest in the First Loan and its deed of trust to BONY as trustee for the Trust.

In June 2010, Arabia filed a first amended complaint naming BAC and others as defendants. The first amended complaint alleges nonjudicial foreclosure irregularities, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, and promissory estoppel. The first amended complaint details the defendants' alleged improper nonjudicial foreclosure efforts and Arabia's attempts to negotiate a resolution to his mortgage loan woes over a two-year period. As part of this suit, Arabia is seeking, among other things, damages for the property's lost equity.

In response to the first amended complaint, BAC filed a cross-complaint for judicial foreclosure. On April 14, 2011, prior to Arabia answering the cross-complaint, BAC filed an amended cross-complaint for judicial foreclosure. The amended cross-complaint added CWMBS and Countrywide as cross-complainants.

BAC subsequently moved for summary judgment on its cross-complaint. The court denied the motion because it believed BAC did not address the existence of junior lienholders and whether they had notice of the suit. The court also ruled BAC had not shown the First Loan was a recourse loan. At oral argument, the court explained its denial was without prejudice and encouraged BAC to "clean up" the motion and refile it.

---

[2] The PSA identifies Countrywide Servicing as the master servicer. The parties do not dispute that Countrywide Servicing changed its name to BAC. Arabia does not dispute that BAC is the loan servicer for the First Loan.

Addressing the court's concerns, BAC filed a subsequent motion for summary judgment. Arabia filed an opposition, but did not address the issue of BAC failing to name the junior lienholder (Countrywide) as a cross-defendant.

In a thorough five and one-half page order, the court granted the motion. The court then entered a decree of judicial foreclosure. Arabia timely appealed.

## DISCUSSION

### I

### SECTION 725A DOES NOT PROHIBIT A LOAN SER-VICER FROM INITIATING A JUDICIAL FORECLOSURE ACTION IN ITS NAME

#### A.    Standard of Review and Arabia's Contentions

We review summary judgment de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) We also review de novo the interpretation of any statutes. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].)

Here, Arabia's primary attack on the granting of BAC's motion for summary judgment is that section 725a does not allow a loan servicer to initiate a judicial foreclosure action in its name. Instead, he argues that section 725a only permits the beneficiary or the trustee under a deed of trust to bring a judicial foreclosure action. Because BAC is the loan servicer, Arabia argues that it may not commence a judicial foreclosure action in its name under section 725a, and the court's granting of the motion for summary judgment was thus incorrect.

#### B.    Interpretation of Section 725a

■    In this appeal, we must interpret section 725a.[3] In construing statutes, we determine and effectuate legislative intent. (*People v. Woodhead* (1987) 43

---

[3] Neither party provided any case interpreting section 725a relevant to the issues presented here. BAC has cited a number of cases (including federal and bankruptcy cases) in an attempt to establish a loan servicer has standing to commence a judicial foreclosure action in its name. None of these cases involve section 725a. Accordingly, we do not find them helpful. Further, our independent research has not uncovered any California case on point.

Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154]; *People ex rel. Younger v. Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].) To ascertain intent, we look first to the words of the statutes. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323]; *Woodhead, supra,* at p. 1007.) "Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible." (*California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].)

Section 725a provides: "The beneficiary or trustee named in a deed of trust or mortgagee named in a mortgage with power of sale upon real property or any interest therein to secure a debt or other obligation, or if there be a successor or successors in interest of such beneficiary, trustee or mortgagee, then such successor or successors in interest, shall have the right to bring suit to foreclose the same in the manner and subject to the provisions, rights and remedies relating to the foreclosure of a mortgage upon such property."

Arabia contends section 725a specifically allows only the beneficiary or the trustee to initiate a judicial foreclosure action. We see no such restriction in the applicable text. The statute states that the beneficiary, trustee, mortgagee, or the successor in interest to any of these three entities has the right to file suit for judicial foreclosure. It does not explicitly prevent a beneficiary or trustee from contracting its right to do so to a loan servicer.

Arabia, however, argues that if the Legislature had intended to allow an agent of the beneficiary, like a loan servicer, to initiate a foreclosure action in the agent's name, it would have included such language in section 725a. To support his contention, Arabia points to the Legislature's inclusion of the term "agent" in Civil Code section 2924, subdivision (a)(1), which states in pertinent part: "The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default."

■ As a threshold matter, we note that Civil Code section 2924, subdivision (a)(1) states who may initiate a nonjudicial foreclosure. (See *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155 [121 Cal.Rptr.3d 819].) It does not apply to judicial foreclosures. For this reason alone, Civil Code section 2924, subdivision (a)(1) is not particularly helpful in interpreting Code of Civil Procedure section 725a. That said, we are mindful that Code of Civil Procedure section 725a and Civil Code section 2924, subdivision (a)(1) are part of "an elaborate and interrelated set of foreclosure and antideficiency statutes relating to the enforcement of obligations secured by interests in real property." (*Alliance Mortgage Co. v. Rothwell*

(1995) 10 Cal.4th 1226, 1236 [44 Cal.Rptr.2d 352, 900 P.2d 601] (*Alliance*).) Under this statutory scheme, there is only " 'one form of action' " for the recovery of any debt or the enforcement of any right secured by a mortgage or deed of trust. (*Ibid.*; see § 726, subd. (a).) The action is foreclosure, which may be either judicial or nonjudicial. (§§ 725a, 726, subd. (a).) However, the differences between nonjudicial and judicial foreclosures make clear that the Legislature decided that a nonjudicial foreclosure requires a more comprehensive statutory scheme than a judicial foreclosure because the latter involves significant judicial involvement.

"In a nonjudicial foreclosure, also known as a 'trustee's sale,' the trustee exercises the power of sale given by the deed of trust." (*Alliance, supra*, 10 Cal.4th at p. 1236.) "Nonjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, '[n]either appraisal nor judicial determination of fair value is required,' and the debtor has no postsale right of redemption." (*Ibid.*)

Not surprisingly, given the lack of court involvement, Civil Code sections 2924 through 2924k, "provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 [30 Cal.Rptr.2d 777] (*Moeller*).) "These provisions cover every aspect of exercise of the power of sale contained in a deed of trust." (*I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285 [216 Cal.Rptr. 438, 702 P.2d 596].) For example, the scheme establishes (1) meet and confer requirements between a lender and a borrower prior to the initiation of a nonjudicial foreclosure (Civ. Code, § 2923.5); (2) the recording and mailing of a notice of default begins the nonjudicial foreclosure process and who can start this process (Civ. Code, § 2924, subd. (a)(1)); (3) the content of the notice of default (Civ. Code, § 2924, subd. (a)(1)(A)–(D)); (4) the content and timing of a notice of sale (Civ. Code, § 2924f, subd. (b)(1)); (5) a borrower's reinstatement rights (Civ. Code, § 2924c, subds. (a)–(e)); and (6) the trustee sale procedure (Civ. Code, § 2924g).

Judicial foreclosure does not require a similar comprehensive statutory scheme as nonjudicial foreclosure because of the degree of court oversight. As its name implies, to commence a judicial foreclosure, the foreclosing party must file a lawsuit. Therefore, instead of merely causing a notice of default to be recorded and proceeding toward a foreclosure sale per the Civil Code without court involvement, the plaintiff must prove its case to the satisfaction of the court. The plaintiff must establish the subject loan is in default and the amount of default. (See 1 Bernhardt, Mortgages, Deeds of Trust, and Foreclosure Litigation (Cont.Ed.Bar 4th ed. 2011) Judicial Foreclosure, § 3.1, p. 181 (Bernhardt).) If successful in proving the loan is in default,

the plaintiff will ask the court to order the property sold to satisfy the loan balance. (*Ibid.*) Inherent in this process, the plaintiff must prove it has the right to initiate the judicial foreclosure.

In addition, under certain circumstances that are not disputed here, a judicial foreclosure allows the plaintiff to seek a deficiency judgment against the borrower, if the property is sold for less than the amount of indebtedness. The amount of the deficiency judgment will be the difference between the fair market value of the property at the time of the foreclosure sale (as determined by the court) and the amount of indebtedness. (See *Alliance, supra,* 10 Cal.4th at p. 1236.) "However, the debtor has a statutory right of redemption, or an opportunity to regain ownership of the property by paying the foreclosure sale price, for a period of time after foreclosure." (*Ibid.*)

With these differences between nonjudicial foreclosure and judicial foreclosure in mind, it is clear to us that Civil Code section 2924, subdivision (a)(1) is not useful in interpreting Code of Civil Procedure section 725a. Civil Code section 2924, subdivision (a)(1) is part of a broad statutory system that creates a largely ministerial process leading to a foreclosure sale that does not require any court oversight. "The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." (*Moeller, supra,* 25 Cal.App.4th at p. 830.) While judicial foreclosure shares the latter two purposes, it definitely does not support the first because a judicial foreclosure requires the anvil of the legal process. As such, it usually will involve all the trappings of typical litigation, including counsel, discovery, dispositive motions, pretrial motions, and, if not resolved, trial and appeal. Thus, it does not stretch our imagination to understand why nonjudicial foreclosure is "overwhelmingly preferred by lenders" and is far more common than judicial foreclosure in California. (*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 221, fn. 5 [110 Cal.Rptr.3d 201]; see Bernhardt, *supra,* § 3.1, p. 181 [nonjudicial foreclosure "is the most common mechanism used by real estate secured creditors whose loans have gone into default"].)

In summary, without court involvement and considering the finality of a borrower losing real property for failing to repay his or her loan, the Legislature saw fit to explicitly set out who could initiate a nonjudicial foreclosure under Civil Code section 2924, subdivision (a)(1). The Legislature did not have the same concerns in drafting section 725a, which requires the filing of a lawsuit to initiate foreclosure. Further, neither any authority cited by Arabia nor the legislative history of section 725a compels a different

interpretation. Simply put, section 725a does not prohibit a loan servicer from filing suit to initiate a judicial foreclosure.

### C. The Assignability of the Right to Judicially Foreclose

■ While section 725a does not prohibit a loan servicer from filing a judicial foreclosure action in its name, it also does not explicitly allow a loan servicer to file such an action. Thus, the loan servicer must find its authority to initiate a judicial foreclosure elsewhere. Here, BAC contends it was assigned the right to bring a judicial foreclosure action by contract.

■ The legal concept of assignment refers to the transferability of all types of property, including a cause of action. (*Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1259 [45 Cal.Rptr.3d 362, 137 P.3d 192] (*Essex Ins. Co.*).) A cause of action, sometimes called a "thing in action," "is a right to recover money or other personal property by a judicial proceeding." (Civ. Code, § 953.) A cause of action is assignable by its owner if it arises out of a legal obligation or a violation of a property right. (Civ. Code, § 954.) With the exception of causes of action of a personal nature, such as injuries arising out of tort, a cause of action is assignable. (*Goodley v. Wank & Wank, Inc.* (1976) 62 Cal.App.3d 389, 393–394 [133 Cal.Rptr. 83]; see *Baum v. Duckor, Spradling & Metzger* (1999) 72 Cal.App.4th 54, 64–65 [84 Cal.Rptr.2d 703] [tracing general rule conferring assignability of causes of action, which arise out of an obligation, breach of contract, violation of a right of property, or damage to personal or real property].)

Here, the judicial foreclosure action arises out of a legal obligation. Arabia signed a promissory note. The promissory note indicates that Arabia received a loan for $2,846,250 and promised to repay it. It also explains that it is secured by a deed of trust. Among other things, the deed of trust contains a clause that allows the lender to invoke the power of sale. In other words, if Arabia fails to timely make his mortgage loan payments and falls into default, the lender would have the option to sell Arabia's property under "Applicable Law."[4] While section 725a is the "Applicable Law" that allows a judicial foreclosure, no such right would exist absent the promissory note and deed of trust. The right to foreclose thus arises out of an obligation (the promissory note and related deed of trust).

■ Against this foundation, "[w]e start from the proposition that assignability is the rule." (*Essex Ins. Co., supra,* 38 Cal.4th at p. 1263.) For this

---

[4] The deed of trust defines "Applicable Law" as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of the law) as well as all applicable final, non-appealable judicial opinions."

reason, it is Arabia's burden to show that some exception to the rule applies in this case. He has not carried his burden.

Arabia first argues the PSA, under which BAC is assigned the authority to foreclose, cannot "override" section 725a. This argument assumes section 725a prohibits a loan servicer from initiating a judicial foreclosure action in its name. As we discuss above, it does not, and thus, we reject Arabia's argument accordingly.

Arabia next insists BONY has not transferred its interest in the promissory note and the deed of trust to BAC; thus, BAC cannot judicially foreclose. Arabia's contention misses the mark. The PSA provides that BAC is authorized to foreclose on Arabia's deed of trust. Put differently, BAC has been assigned a cause of action (judicial foreclosure) that arose out of a legal obligation (the promissory note and deed of trust). Whether the promissory note and/or the deed of trust were assigned to BAC therefore is immaterial.

Arabia also insists BAC cannot judicially foreclose under the PSA because "BAC is not in compliance with the PSA." However, Arabia fails to explain why BAC's breach of the PSA matters in the instant action. Arabia obtained a mortgage loan secured by a deed of trust recorded against the property. If Arabia failed to make his payments, he faced the possibility of foreclosure. This is what happened here. There is no dispute that Arabia has failed to make his payments on the First Loan and is subject to foreclosure. Whether BAC has breached an agreement with BONY does not alter these undisputed facts or the consequence arising out of Arabia's failure to repay the First Loan.

Moreover, if BAC had breached the PSA, then perhaps BONY would have a claim against BAC. But it is an unsupported leap of logic that would allow Arabia to use these breaches to challenge BAC's right to initiate a judicial foreclosure, especially considering the "breaches" Arabia raises.

■ First, he argues, under the PSA, BAC was required to conduct foreclosures "as shall be normal and usual" and to protect loans held in the Trust "in the same manner as it protects its own interest in mortgage loans." Arabia asserts the judicial foreclosure was not "normal and usual" because BAC failed to name the owner of the second lien on the property (Countrywide) as a cross-defendant. However, he cites no authority that requires a holder of the second lien be a named defendant in a judicial foreclosure action. While this may be a good practice (see Bernhardt, *supra*, § 3.32, pp. 203–204), the failure to do so does not somehow disqualify BAC from seeking a judicial foreclosure. More importantly, Arabia has cited no authority that the failure to include the junior lienholder as a defendant in a judicial foreclosure action

renders the action improper as to the named parties, including the borrower. (*Id.*, § 3.33 at p. 204 [When a junior lienholder has been omitted from a senior judicial foreclosure action and sale, "[t]he foreclosure and sale are not void but are ineffective in foreclosing as far as the junior lien is concerned"]; see *Carpentier v. Brenham* (1870) 40 Cal. 221, 225–226; *Fox v. California Title Ins. Co.* (1932) 120 Cal.App. 264, 266–267 [7 P.2d 722].)

In addition, we note that Arabia provided no evidence to support his claims of BAC's breach of the PSA. He did not establish the "normal" and "usual" judicial foreclosure practice. He did not offer deposition testimony from a BAC, BONY, or Countrywide representative to explain the foreclosure strategy or show that BAC was required to include Countrywide as a cross-defendant under the PSA. He did not present any expert opinion testimony regarding typical judicial foreclosure practice. Further, Countrywide was a named cross-complainant in the judicial foreclosure action; thus, it has knowledge of the proceeding and can take action, if it deems it necessary, to protect its interests.

Second, Arabia argues the PSA provided BAC with the authority to obtain BONY's authorization and signatures on necessary documents to effectuate foreclosure. Otherwise stated, Arabia once again contends BAC could not initiate the judicial foreclosure action in its name, but must sue on behalf of BONY. We read no such requirement in the PSA. Although the PSA states that BONY will cooperate with BAC's foreclosure efforts, it does not require that BAC initiate a judicial foreclosure action in BONY's name.

Finally, Arabia contends that allowing BAC to initiate a judicial foreclosure would undermine the protections of section 725a and allow a lender to "disadvantage" a homeowner. We disagree.

Arabia does not explain how he is being disadvantaged. There is no dispute that BAC is the servicer of Arabia's loan. Arabia does not claim that foreclosure is unwarranted. To the contrary, he concedes he borrowed a substantial amount of money and has not made payments since October 2007. He does not contend that a second entity is seeking or will seek to foreclose on the same deed of trust at issue here. Simply put, other than his bald assertion, we conclude there is no evidence that Arabia has been or will be disadvantaged if BAC is permitted to initiate a judicial foreclosure in its name.

### D.   Arabia's Equity Contentions

In addition, Arabia claims that allowing BAC to initiate a judicial foreclosure undermines California's "foreclosure scheme." We disagree.

We do not analyze any of Arabia's arguments in regard to the statutory scheme governing nonjudicial foreclosures. A nonjudicial foreclosure is not at issue here. Instead, we evaluate Arabia's contentions in the context of a judicial foreclosure action.

Arabia first argues the court, under the guise of equity, ignored the protections of California foreclosure law. He claims that the court was "motivated to rule for BAC by virtue of the fact that Arabia had defaulted on the mortgage in late 2007 . . . ." Even if this was the case, it would not be sufficient to warrant reversal absent an incorrect result. (See *J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15–16 [68 Cal.Rptr.2d 837] ["We do not review the trial court's reasoning, but rather its ruling. A trial court's order is affirmed if correct on any theory, even if the trial court's reasoning was not correct."].)

Further, Arabia's claim is not supported by the record. In the court's five and one-half page minute order granting BAC's motion for summary judgment, it did not mention equity as a basis for its ruling. Instead, the court noted the statutory language of 725a "is not exclusive" and did not prevent BAC from initiating the judicial foreclosure action in its name. Arabia ignores the minute order, but focuses on the court's comments in response to Arabia's trial counsel's request for a trial continuance: "Well, we're not continuing the trial. You know, I—I mean, Mr. Arabia has been in there for four years not paying any money. We're gonna end it. We're going to end it one way or another. [¶] So you're either in the case; you're out of the case. Mr. Arabia can try the case himself." Despite the court's comments, it ultimately agreed to continue the trial. In addition, these comments do not support the inference that the court was motivated to rule for BAC and ignored certain foreclosure statutory protections under the pretext of equity. They plainly were aimed at Arabia's desire to continue the trial, not the merits of the judicial foreclosure action.

Next, Arabia claims that BAC should not be allowed to bring a judicial foreclosure action in its name because it already botched three nonjudicial foreclosures, it lulled Arabia into inaction with promises of settlement discussions, and the judicial foreclosure action is merely a means to "neutralize" Arabia's lawsuit against BAC. He, however, offers no authority to support his position. Our independent research has not found any either. In fact, a party might believe it strategically wise to initiate a judicial foreclosure action while simultaneously proceeding with a nonjudicial foreclosure. (Cf. Bernhardt, *supra*, § 3.5, p. 184.) Moreover, there is nothing in section 725a or its legislative history that leads us to believe the Legislature wanted to prevent an entity from initiating a judicial foreclosure after it was sued by a borrower for nonjudicial-foreclosure-related claims. Also, we are not compelled to reach a different conclusion based on Arabia's contention BAC

should not be permitted to use any potential deficiency judgment against him as an offset of any damages he might recover in his suit against BAC. There is nothing indicating the Legislature ever considered such an issue when it drafted section 725a.

Finally, Arabia insists a court may only use equity to protect and enforce California's foreclosure scheme, not to undermine it. To support his argument, he cites *Bank of America v. Daily* (1984) 152 Cal.App.3d 767 [199 Cal.Rptr. 557] (*Daily*) and *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991 [275 Cal.Rptr. 201, 800 P.2d 557] (*Wozab*). Neither case is instructive here.

In *Daily*, the court held that the bank had waived its right to foreclose under a deed of trust because it had offset a portion of the debt owed under the subject secured loan by taking money from the Daily's checking account. (*Daily, supra*, 152 Cal.App.3d at p. 773.) In *Wozab*, our high court "reaffirm[ed] the long-standing rule that under section 726[, subdivision] (a)[,] a bank is not allowed to take a unilateral setoff of funds in a depositor's demand account against a debt secured by the depositor's interest in real property." (*Wozab, supra*, 51 Cal.3d at p. 1000.) Thus, both *Daily* and *Wozab* stand for the proposition that a bank's violation of section 726 can result in its waiver of its right to foreclose under a deed of trust. Here, Arabia has not and cannot point to a similar violation of section 726 by BAC.[5] BAC has not tried to enforce the underlying debt against Arabia prior to proceeding against the security. (See, e.g., *Walker v. Community Bank* (1974) 10 Cal.3d 729, 733–734 [111 Cal.Rptr. 897, 518 P.2d 329].) Nor has BAC otherwise violated the "one action rule." (See *Alliance, supra*, 10 Cal.4th at p. 1236; § 726, subd. (a).) *Daily* and *Wozab* simply are not applicable to the instant matter.

### E.   Conclusion

Arabia's only challenge to the court's granting of BAC's motion for summary judgment is his argument that section 725a does not permit a loan servicer to bring a judicial foreclosure action in its name. He claims that allowing a loan servicer to initiate a judicial foreclosure undermines California's foreclosure scheme. However, Arabia fails to articulate why this is so. He does not contend BAC has violated the "one action rule." (See § 726, subd. (a).) He does not argue he is subject to additional liability based on the same promissory note and deed of trust. He fails to argue a deficiency judgment is not available. (See §§ 580b, 580d, 580e, 726, subd. (b).) Arabia does not dispute that he obtained a mortgage loan, he is in default under that

---

[5] *Wozab* disapproved of the court's reasoning in *Daily, supra*, 152 Cal.App.3d 767, but not the result. (See *Wozab, supra*, 51 Cal.3d at p. 999, fn. 7.)

loan, and a foreclosure sale is a consequence of that default. Instead, he baldly asserts he will be disadvantaged if we allow a loan servicer to initiate a judicial foreclosure action in its name. We are left to wonder: how?

The basic facts giving rise to a foreclosure sale are undisputed. Arabia refinanced his home and has not repaid the mortgage loan as promised. The mortgage loan is secured by a deed of trust recorded against Arabia's home. The deed of trust contains a power of sale clause allowing the property to be sold at a foreclosure sale. BONY, the current beneficiary, assigned its right to foreclose to BAC. BAC is the loan servicer of Arabia's mortgage loan. It initiated a judicial foreclosure action in its name and obtained a foreclosure decree after moving for summary judgment. In light of this record, we fail to see how a beneficiary under a deed of trust contracting its right to judicially foreclose to the loan servicer undermines California's foreclosure scheme. If Arabia can prove BAC and others are liable for causes of action arising out of the nonjudicial foreclosure attempts as detailed in his first amended complaint, he might be entitled to damages. However, he has not shown that a triable issue of material fact exists that warrants us to reverse the superior court's granting of BAC's motion for summary judgment.

## II

### EXCEPT FOR THE PROVISION ORDERING ARABIA TO PAY BAC RENT, ARABIA'S CHALLENGES TO THE FORECLOSURE DECREE ARE WITHOUT MERIT

#### A.   Arabia's Contentions

Arabia challenges several portions of the foreclosure decree. He argues the foreclosure decree (1) contains unsuitable language regarding the junior lien; (2) improperly makes BAC the owner of any deficiency judgment; (3) incorrectly awards interest; (4) prematurely orders rent to be paid to BAC; and (5) prematurely orders Arabia to refrain from committing waste on the property. In response, BAC ignores most of the issues Arabia raises and baldly asserts they were forfeited. Indeed, the only contention to which BAC responds in substance is the first.

#### B.   Failure to Delete Language Regarding the Junior Lien

Paragraph 9 of the foreclosure decree states: "James Arabia, all persons claiming from or under him, all persons and their personal representatives having liens subsequent to the deed of trust by judgment or decree on the described real property, all persons and their heirs or personal representatives

having any lien or claim by or under such subsequent judgment or decree, and all persons claiming under them, are forever barred and foreclosed from all equity of redemption in and claim to the premises, from and after the delivery of the deed by the Sheriff. Pursuant to section 726(c) of the Code of Civil Procedure, nothing herein shall affect any interests held by junior lien holders who have a recorded interest in the Property and who were not joined as a cross-defendant. Pursuant to section 726(c) of the Code of Civil Procedure, any such junior lien holders retain their right to redeem until such right expires, and junior liens will reattach in the event James Arabia exercises his right to redeem the property within the applicable statutory period."

In objecting to paragraph 9, Arabia asserted the last two sentences should be deleted because "[t]hese issues are covered by statute." He offered no other authority or explanation to the court. Now, on appeal, Arabia somewhat disjointedly argues his request to delete these two sentences was related to BAC's failure to name the junior lienholder (Countrywide) as a cross-defendant. In addition, he claims the court's refusal to delete the last two sentences and BAC's failure to include Countrywide as a cross-defendant, raises the issue: "[I]s a court required to join a junior lienholder as a co-defendant in an action for judicial foreclosure if the court is aware of the junior lien, especially when, as here, the trustor requested that they be joined?"

As a general rule, we are limited to deciding those issues that the appellant has preserved for appeal. " 'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method . . . . The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . . Often, however, the explanation is simply that it is unfair to the trial judge and to the adverse party to take advantage of an error on appeal when it could easily have been corrected at the trial.' [Citation.]" (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261] (*Doers*), italics omitted; see *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002 [64 Cal.Rptr.2d 383].)

Here, there is no indication in the record that Arabia ever moved to join Countrywide as a cross-defendant. He does not cite us to his opposition to BAC's motion for summary judgment or any other pleading contained in the record where he addressed BAC's failure to include Countrywide as a cross-defendant in the judicial foreclosure cross-complaint. At best, during oral argument on BAC's motion for summary judgment, Arabia referred to

Countrywide's omission as "improper" and told the court that if it was inclined to allow BAC to proceed with the judicial foreclosure action, it should "require joinder" of Countrywide. Arabia did not cite any authority to support his position and certainly did not advance the arguments he now raises on appeal. Thus, he has forfeited his joinder argument. (See *Doers, supra*, 23 Cal.3d at pp. 184–185, fn. 1.)

Even if we were to conclude Arabia did not forfeit this issue, we would still determine it to be without merit. Arabia asks us to create a new rule ·whereby a court would have to add a junior lienholder as a defendant in a judicial foreclosure action if requested by a borrower. He cites no authority mandating such a rule, but instead, urges this rule is warranted because section 726 is intended to protect the debtor and failing to name a junior lienholder is an irregularity that undermines that statute. Arabia also notes the court has the power to join a junior lienholder under section 389, subdivision (a). We are not persuaded.

Arabia's reliance on section 726 is misplaced. It does not require a senior lienholder to name all junior lienholders as defendants in a judicial foreclosure action. Arabia's argument to the contrary is based on his failure to focus on a junior lienholder's rights when it is not a party to a judicial foreclosure action brought by a senior lienholder.

Section 701.630 provides that if property is judicially foreclosed, "any liens subordinate thereto . . . on the property sold are extinguished." Further, section 729.080, subdivision (d) provides that "upon redemption the effect of the sale is terminated and the person who redeemed the property is restored to the estate therein sold at the sale." Section 729.080, subdivision (e), however, clarifies that "[l]iens extinguished by the sale, as provided in Section 701.630, do not reattach to the property after redemption, and the property that was subject to the extinguished lien may not be applied to the satisfaction of the claim or judgment under which the lien was created." Thus, these subdivisions suggest that any junior liens are extinguished in a judicial foreclosure sale.

On the other hand, section 726, subdivision (c) carves out an exception. It provides: "Notwithstanding Section 701.630, the sale of the encumbered real property . . . does not affect the interest of a person who holds a conveyance from or under the mortgagor of the real property . . . or has a lien thereon, if the conveyance or lien appears of record in the proper office at the time of the commencement of the action and the person holding the recorded conveyance or lien is not made a party to the action." The termination of redemption and reattachment rights by sections 701.630 and 729.080, subdivision (e) does not occur when a junior lienholder has not been named as a defendant in a judicial foreclosure action involving a senior lien. (§ 726, subd. (c).)

Ignoring section 726, subdivision (c) and citing *Diamond Benefits Life Ins. Co. v. Troll* (1998) 66 Cal.App.4th 1 [77 Cal.Rptr.2d 581] (*Diamond*), Arabia maintains the omission of a junior lienholder in a judicial foreclosure action is a "mistake" and "defective." *Diamond* does not support Arabia's position.

*Diamond, supra,* 66 Cal.App.4th 1 does not concern a junior lienholder. Instead, it addresses the situation where an unnamed party is a holder of an easement. (*Id.* at p. 8.) Further, to the extent that *Diamond* is applicable here, it undermines Arabia's position. In *Diamond*, the court determined that "[t]he foreclosure was valid as to the parties served," even though the easement holder was not a named party. (*Id.* at p. 9.) Thus, under *Diamond*, the instant judicial foreclosure action and any subsequent sale would be valid as to Arabia.

In short, the omission of a junior lienholder in a judicial foreclosure action does not violate section 726. To the contrary, section 726, subdivision (c) anticipates such omission. It does not prohibit it.

Like section 726, section 389, subdivision (a) offers no help to Arabia. In his opening brief, Arabia merely notes that the superior court could have joined Countrywide under section 389, subdivision (a). However, he fails to explain why this subdivision required the court to add Countrywide as a cross-defendant.

A court has the power to join a necessary party under section 389, subdivision (a).[6] (*Deltakeeper v. Oakdale Irrigation Dist.* (2001) 94 Cal.App.4th 1092, 1100 [115 Cal.Rptr.2d 244] (*Deltakeeper*). Subdivision (a) contains three distinct clauses, any of which must be satisfied for an unnamed party to be considered necessary. " 'Clause (1) stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or "hollow" rather than complete relief to the parties before the court. The interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter. Clause (2)(i) recognizes the importance of protecting the person whose joinder is in question against the practical prejudice to him which may arise through a disposition of the action in his absence. Clause

---

[6] Section 389, subdivision (a) provides: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party."

(2)(ii) recognizes the need for considering whether a party may be left, after the adjudication, in a position where a person not joined can subject him to a double or otherwise inconsistent liability.' " (*Countrywide Home Loans, Inc. v. Superior Court* (1999) 69 Cal.App.4th 785, 792–793 [82 Cal.Rptr.2d 63], quoting Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc. (2004 ed.) foll. § 389, p. 420.)

The first clause of section 389, subdivision (a), the "complete relief" clause, focuses not on whether complete relief can be afforded all possible parties to the action, but on whether complete relief can be afforded the parties named in the action. (*Countrywide Home Loans, Inc. v. Superior Court, supra*, 69 Cal.App.4th at pp. 793–794.) Here, we are satisfied that complete relief can be afforded the parties.

BAC's cross-complaint is a judicial foreclosure action. A judicial foreclosure action arises out of a borrower's failure to repay his mortgage loan as promised. Here, the judicial foreclosure action is based on the First Loan only. In successfully moving for summary judgment, BAC proved Arabia entered into the First Loan, he defaulted on the First Loan, the amount of the indebtedness based on the First Loan, and the First Loan was a recourse loan. Based on the foreclosure decree, the property can be sold and BAC could be entitled to a deficiency judgment. This entire action is based solely on the First Loan. Countrywide is a junior lienholder. Its interest in the property derives from the HELOC, not the First Loan. It therefore is not required as a cross-defendant in the judicial foreclosure action for the named parties to obtain "complete relief."

Nevertheless, Arabia contends, without any supporting evidence, the absence of Countrywide as a cross-defendant will reduce the purchase price of the property and negatively impact his ability to redeem the property. Even if we accept these contentions as true, they do not prevent the named parties from obtaining complete relief. Their rights, obligations, and liabilities under the First Loan will be fully adjudicated without Countrywide. In short, "[i]n this case there is no risk of partial or hollow relief to the named parties." (*Deltakeeper, supra*, 94 Cal.App.4th at p. 1101.)

The second clause of subdivision (a) of section 389 is concerned with protecting the entity whose joinder is in question. Thus, here, we evaluate whether Countrywide would be prejudiced through a disposition of the judicial foreclosure action in its absence. We answer this question in the negative. A junior lienholder's interest in a property that is subject to a judicial foreclosure on a senior lien is not affected if the junior lienholder is not included as a defendant in the judicial foreclosure action. (§ 726, subd. (c).) Accordingly, Countrywide's interest in the property is unaffected by the judicial foreclosure action at issue.

The third clause of section 389, subdivision (a) focuses on the possibility that a party would be subject to "double . . . or otherwise inconsistent" liability because of the absence of another party. Here, the absence of Countrywide does not subject Arabia to double or inconsistent liability. The judicial foreclosure action is based solely on the First Loan. Countrywide has no interest in that loan. Therefore, Countrywide cannot bring an action based on it, and Arabia is not subject to any additional liability established by the First Loan because Countrywide is not a cross-defendant. If Countrywide has any claim against Arabia, it must be based on the HELOC.[7]

Accordingly, we conclude Countrywide is not a necessary party to the judicial foreclosure action under section 389, subdivision (a).

### C. The Potential Deficiency Judgment

Arabia also insists the foreclosure decree is defective because it awards BAC a deficiency judgment to the extent that one is necessary after the sale of the property. We disagree.

At the outset, we note that this challenge to the foreclosure decree is merely a rehashing of Arabia's failed argument that BAC cannot initiate a judicial foreclosure action in its name. As we discuss above, we conclude that section 725a does not prevent BAC, as the loan servicer, from doing so. As BAC is permitted to initiate a judicial foreclosure action as a cross-complainant, it would be entitled to a deficiency judgment if not otherwise prohibited. (§ 726, subd. (b).)

Section 726, subdivision (b) provides in part: "In the event that a deficiency is not waived or prohibited and it is decreed that any defendant is personally liable for the debt, then upon application of the plaintiff filed at any time within three months of the date of the foreclosure sale and after a hearing thereon at which the court shall take evidence and at which hearing either party may present evidence as to the fair value of the real property or estate for years therein sold as of the date of sale, the court shall render a money judgment against the defendant or defendants for the amount by which the amount of the indebtedness with interest and costs of levy and sale and of action exceeds the fair value of the real property or estate for years therein sold as of the date of sale." Thus, under the plain language of

---

[7] In stating Countrywide's claims would be based on the HELOC and not the First Loan, we offer no opinion of its potential claims, if any, including whether it would be entitled to foreclose and/or seek a deficiency judgment.

subdivision (b), BAC, as the party seeking judicial foreclosure,[8] is entitled to obtain a deficiency judgment, if one is warranted. As such, it was appropriate for the court to award any potential deficiency judgment to BAC.

■ Further, we are not concerned by Arabia's argument that he never borrowed money from BAC or that he does not owe BAC money under the First Loan. Pursuant to section 726, subdivision (a), only one action may be brought to enforce any right under a deed of trust. As part of that action, the party successfully seeking judicial foreclosure can obtain a deficiency judgment, if not otherwise prevented by law. (See § 726, subd. (b).) Another party cannot subsequently attempt to enforce any rights under the same deed of trust or seek an additional deficiency judgment based on indebtedness arising out of the same loan. Therefore, we are satisfied that neither the beneficiary nor any other party can validly subsequently seek a deficiency judgment under the First Loan and its corresponding deed of trust. The potential deficiency judgment in BAC's name is not improper.

Arabia, however, argues that BAC should not be awarded a deficiency judgment in its name because BAC could use it to offset any damages Arabia is awarded in his suit against BAC. We do not agree. Here, Arabia does not dispute that he borrowed money with the First Loan or failed to repay it. He does not argue that a deficiency judgment is prohibited under statute or case law.[9] In essence, Arabia concedes a deficiency judgment could be available depending on the sale price of the property, the fair market value of the property, and his amount of indebtedness under the First Loan. This fact does not change regardless of which entity is awarded the deficiency judgment, even if Arabia is seeking damages against that same entity. We find nothing in any statute governing judicial foreclosures or deficiency judgments that prevents an entity from obtaining a deficiency judgment simply because the debtor is affirmatively seeking damages against that entity in a lawsuit.

### D. Interest

Arabia next challenges the interest awarded in the foreclosure decree. Because Arabia did not sufficiently raise this issue with the superior court, we conclude he has forfeited it. (*Doers, supra,* 23 Cal.3d at pp. 184–185, fn. 1.)

---

[8] Section 726, subdivision (b) assumes the party initiating a judicial foreclosure action is a plaintiff. Here, where a judicial foreclosure action is brought by cross-complaint, the term "cross-defendant" can be substituted for the term "plaintiff" in the statute without changing the statute's purpose or meaning.

[9] Instead, Arabia claims BAC caused the property to diminish in value thus making a deficiency judgment possible, which is an allegation in his complaint against BAC.

In objecting to the proposed foreclosure decree at paragraph 3(f), Arabia merely argued to the superior court that he should be liable for the postjudgment interest rate until the date of sale. The court rejected this suggestion. He did not argue that postjudgment interest was illegal.

In addition to the mention of interest in paragraph 3(f) of the foreclosure decree, paragraph 5 discusses when interest would begin to run. Although Arabia suggested additional language for paragraph 5, he did not challenge the sentence in paragraph 5 regarding when interest would begin to run: "From the sale proceeds, the Sheriff shall pay to BAC, after deducting expenses of the levy and sale, the sums adjudged owing under paragraph 3 together with interest at the annual rate of 10 percent from the date of this judgment."

On appeal, however, Arabia now contends the foreclosure decree "illegally" permits "post-judgment interest at the legal rate." This is an entirely different argument than the one he raised with the superior court. Because he did not present this argument to the superior court and allow it the opportunity to address the issue, Arabia has forfeited it. (*Doers, supra*, 23 Cal.3d at pp. 184–185, fn. 1.)

### E. Rent to be Paid to BAC and Contempt

Arabia also insists the foreclosure decree is improper because, in paragraph 10, it prematurely orders Arabia to pay rent and profits to BAC from the time of the sale until the time of redemption or the expiration of the redemption period (whichever is first). In addition, he argues the foreclosure decree incorrectly includes the award of rent and profits because it allows BAC to seek criminal contempt for failing to make the payments.

Arabia is correct that under section 729.090, subdivision (a), the purchaser of the property is entitled to receive from the "person in possession" of the property the "value of the use and occupation of the property" from the "time of the sale until a redemption." We also agree that the court was presumptuous in awarding rent and profits to BAC prior to the sale because the identity of the purchaser was not known at the time. Therefore, paragraph 10 of the decree order is both unnecessary and improper.

We also are concerned that when the property is sold[10] and if BAC is not the purchaser, then Arabia, if he remains in possession of the property, could

---

[10] Apparently, the property has been sold since this appeal was filed. Arabia has requested we take judicial notice of the purchase price contained in the notice to judgment debtor right to redeem real property. As part of this request, he also claims that the name of the purchaser is incorrect in the document. The document states "BAC Home Loans Servicing LP et, al." purchased the property for $1.95 million. BAC opposes Arabia's request for judicial notice as

owe rent for the same property to two different entities: BAC under the foreclosure decree and the purchaser of the property under section 729.090, subdivision (a). This would be an inequitable result and paragraph 10 of the foreclosure decree should be stricken. Of course, even with paragraph 10 stricken, if BAC is the purchaser of the property, it could be entitled to rent from Arabia under section 729.090, subdivision (a).[11]

## F. Waste

Arabia argues the foreclosure decree in paragraph 11 prematurely imposes an order preventing him from committing waste on the property. He asserts such an order is only proper after the foreclosure sale. (See § 729.090, subd. (c).) He is correct, but he failed to raise this issue with the trial court. Instead, he merely stated that paragraph 11 should be deleted because it was covered by statute. Therefore, we conclude he has forfeited this issue on appeal. (See *Doers, supra,* 23 Cal.3d at pp. 184–185, fn. 1.) Moreover, even if we did not determine Arabia forfeited this issue, reversal would not be appropriate because he has not shown any prejudice. (See *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132 [87 Cal.Rptr.2d 132, 980 P.2d 846]; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296 [240 Cal.Rptr. 872, 743 P.2d 932].) Arabia admits a lender can bring an action for waste at any time. Indeed, the deed of trust signed by Arabia states: "Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property." Thus, absent paragraph 11, Arabia already has agreed to refrain from committing waste on the property. The fact this obligation is repeated in the foreclosure decree does not harm Arabia.

---

irrelevant. As this appeal is limited to preforeclosure sale issues, the purchase price allegedly paid at the foreclosure sale is irrelevant, and we decline to take judicial notice as requested. (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4 [67 Cal.Rptr.3d 330, 169 P.3d 559].) While it is not clear if Arabia is requesting we take judicial notice that the purchaser's name is wrong in the document, we cannot take judicial notice of this claim if he is asking us to do so. A matter ordinarily is subject to judicial notice only if the matter is reasonably beyond dispute. (*Post v. Prati* (1979) 90 Cal.App.3d 626, 633 [153 Cal.Rptr. 511].) Here, Arabia is disputing that the document correctly reflects the name of the purchaser at the foreclosure sale. As such, there is nothing that is appropriate for judicial notice. No party has asked us to take judicial notice that the property has been sold or made any other attempt to augment the record to establish the property has been sold. Ignoring for now if either request would be proper (see *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085]), we need not consider whether the property was sold in addressing the issues presented in the instant appeal.

[11] Because we determine paragraph 10 of the foreclosure decree should be stricken, we need not address Arabia's claim that paragraph 10 improperly subjects him to criminal contempt for failing to pay a civil debt.

## DISPOSITION

This matter is remanded to the superior court to strike paragraph 10 of the foreclosure decree. The judgment is otherwise affirmed. The parties shall bear their own costs on this appeal.

Nares, J., and O'Rourke, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 31, 2012, S205517.