Filed 9/12/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| INGRID VAN ZANT,<br><br>   Plaintiff and Appellant,<br><br>   v.<br><br>APPLE INC.,<br><br>   Defendant and Respondent. | H039354<br>(Santa Clara County<br>Super. Ct. No. 1-10-CV-177571) |

This case concerns a question of procedure that may arise when a plaintiff sues a manufacturer for marketing and selling allegedly defective smartphones: If the plaintiff claims internal defects in the smartphone are the sole cause of its failure to perform as advertised, is the network carrier for the smartphone a necessary party to the lawsuit? We conclude the network carrier is not a necessary party.

Plaintiff Ingrid Van Zant brought a class action lawsuit against defendant Apple Inc. (Apple) alleging false advertising, breach of warranty, and other claims relating to Apple's marketing and sales of the iPhone 3G. Van Zant alleged that Apple falsely advertised the iPhone 3G to be "twice as fast" as its predecessor, the iPhone 2G. She claimed that hardware and software flaws inherent in the iPhone 3G prevented it from performing as advertised. The trial court sustained Apple's demurrer and granted its motion to dismiss on the ground that Van Zant failed to join AT&T Mobility LLC (ATTM)—the cellular network carrier for the iPhone 3G—as a necessary party under Code of Civil Procedure section 389, subdivision (a).

We hold that ATTM is not a necessary party. Accordingly, the trial court erred in sustaining the demurrer and dismissing the action. We will reverse the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A. *Allegations of the Operative Complaint*

Van Zant filed her initial class action complaint in Santa Clara County Superior Court on July 21, 2010. On September 21, 2012, she filed her first amended complaint—the operative complaint—alleging seven causes of action: (1) violations of Business and Professions Code section 17200 et seq.; (2) violations of Business and Professions Code section 17500 et seq.; (3) breach of express warranty; (4) violation of the Song-Beverly Consumer Warranty Act (Civ. Code, § 1792 et seq.); (5) negligence; (6) negligent misrepresentation; and (7) unjust enrichment.[1] Van Zant's claims were brought "solely and strictly against Apple and do not nor are intended to seek any redress from [ATTM], operator of the 3G network on which the iPhone 3G was designed to operate." The putative class includes "All persons who purchased one or more iPhone 3Gs from Apple and/or its authorized retailers in the State of California. Excluded from the Class are [Apple], its officers and directors at all relevant times, members of immediate families and their legal representatives, heirs, successors, or assigns and any entity in which [Apple] has or had a controlling interest, and all individuals pursuing arbitration against ATTM."

Van Zant alleges Apple falsely represented the iPhone 3G to be "twice as fast" as the previous version of the iPhone. The complaint asserts: "Plaintiff undertook a side by side comparison of the performance of the iPhone 3G and her previous iPhone and found that the previous iPhone performed just as fast, or at times faster, then her new iPhone 3G device. This side by side suggests that the problems with the iPhone 3G are not related to the ATTM network, but with the device itself [*sic*]." She claims the iPhone 3G's failure

---

[1] Subsequent references to Van Zant's "complaint" refer to the first amended complaint unless otherwise stated.

2

to perform as advertised stems from defects inherent in the iPhone 3G: "Because of hardware and software flaws inherent in the iPhone 3G, the iPhone 3G was incapable of meeting the promised performance standards Apple represented during its multimillion dollar advertising campaign, and the iPhone 3G would have failed to deliver on these promises regardless of the performance of the ATTM 3G network." Specifically, Van Zant claims the poor performance was due either to internal hardware that demanded too much power or software flaws in the device's algorithms. She alleges that "These hardware and software flaws resulted in the iPhone 3G failing to deliver on Apple's 'twice as fast' performance promise, and the slower performance received by actual iPhone 3G users would have been experienced regardless of the performance of the ATTM network. As a result, this Complaint seeks redress solely and exclusively against Apple and does not implicate the performance speeds of the ATTM 3G network."

B. *The Federal Multi-District Litigation (MDL)*

Van Zant's lawsuit in this case was preceded by litigation in federal court, wherein other plaintiffs around the country brought 13 lawsuits against both Apple and ATTM. Those actions raised similar but not identical claims to those at issue here regarding the advertising and performance of the iPhone 3G. In 2009, the Judicial Panel on Multidistrict Litigation (MDL) transferred the federal actions to the United States District Court for the Northern District of California.[2] Because the trial court in this case relied in part on the federal district court's rulings in the MDL case, we briefly summarize the MDL proceedings.

In 2009, the MDL plaintiffs filed a class action master complaint alleging that "Both Apple and ATTM uniformly advertised the iPhone 3G as 'Twice as Fast' in comparison to the '2G' EDGE network on which the earlier iPhone operated. Through

---

[2] Apple requests that we take judicial notice of the district court's orders, its docket, and three of the MDL plaintiffs' master complaints. We grant Apple's request. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

3

marketing to consumers, and even by the very name of the phone itself, [Apple and ATTM] engaged in a campaign to represent to consumers that the new iPhone would be significantly faster with regard to upload and download transfer rates and, therefore, superior to the predecessor iPhone, which operated on the slower 2G network." (*In re Apple iPhone 3G Products Liability Litigation* (N.D. Cal. 2010) 728 F.Supp.2d 1065, 1068.) The MDL plaintiffs claimed that both Apple and ATTM made false and misleading representations, and that both Apple and ATTM "profited by selling iPhone 3G devices without the appropriate infrastructure in place and the presence of defective hardware and software in the iPhone 3G." (*Ibid.*) The MDL plaintiffs also claimed that "Apple and ATTM acted in concert to sell the iPhone 3G and either knew, should have known, or were obligated to understand that they were trying to sell more iPhone 3G devices than the existing ATTM 3G network could handle, and the iPhone 3G itself suffered from defective hardware and software." (*Ibid.*)

The putative class of MDL plaintiffs consisted of "All persons in the United States of America, or in California and such other states within the United States as the Court determines to be appropriate, who purchased an iPhone 3G and entered into an ATTM 3G service contract between July 11, 2008 and the present." The complaint set forth 13 causes of action under state law, and one claim under the federal Magnuson-Moss Warranty Act, 15 U.S.C. section 2301 et seq. (*In re Apple iPhone 3G Products Liability Litigation*, *supra*, 728 F.Supp.2d at p. 1068.)

Both Apple and ATTM moved for dismissal of the MDL complaint, and ATTM moved to compel arbitration. (*In re Apple iPhone 3G Products Liability Litigation*, *supra*, 728 F.Supp.2d at p. 1067.) The district court found that all claims against ATTM were preempted by federal law under the Federal Communications Act and thereby granted ATTM's motion to dismiss with prejudice. (*Id.* at p. 1077.) However, the court granted leave to amend the complaint for claims under the Federal Communications Act. The court also granted Apple's motion to dismiss on the ground that ATTM was an

"indispensible party" under Federal Rule of Civil Procedure 19, subdivision (b). (*Id.* at p. 1076.)

Before amending their complaint, the MDL plaintiffs moved for reconsideration of the order granting Apple's motion to dismiss. The district court denied the motion and reaffirmed its ruling that the action could not proceed against Apple without ATTM since the latter was an indispensable party. (*In re Apple iPhone 3G Products Liability Litigation* (N.D. Cal., Dec. 1, 2011, MDL C 09-02045 JW) 2011 WL 6019217.)

In December 2010, in light of an intervening change in federal preemption law, the district court granted the MDL plaintiffs' motion for leave to file a third amended master complaint. At the same time, the court stayed the proceedings pending the outcome of the United States Supreme Court's then-forthcoming decision in *AT&T Mobility LLC v. Concepcion* (2011) 131 S.Ct. 1740, 1744 (*Concepcion*), which held that California's judicial rule regarding the unconscionability of class arbitration waivers is preempted by the Federal Arbitration Act. (*In re Apple iPhone 3G Products Liability Litigation* (N.D. Cal., Dec. 9, 2010, C 09-02045 JW) 2010 WL 9517400.) The order to stay the proceedings was based on the court's previous finding that " 'the claims against Defendant Apple are inextricably tied to the claims against Defendant ATTM.' " (*Id.* at p. *2, fn. omitted.)

In April 2011, the United States Supreme Court in *Concepcion* upheld the validity of ATTM's arbitration agreement, including the class action waiver. (*Concepcion*, *supra*, 131 S.Ct. at p. 1740.) The district court then lifted its stay of the MDL proceedings. (*In re Apple iPhone 3G Products Liability Litigation*, *supra*, 2011 WL 6019217.) In September 2011, the MDL plaintiffs filed a fourth amended master complaint alleging claims solely against Apple, without naming ATTM as a defendant. (*Ibid.*) Apple again moved to dismiss the complaint on the ground, among others, that the plaintiffs had failed to join ATTM as a necessary party under Federal Rule of Civil Procedure 19. The district court once again reaffirmed its ruling that ATTM was an indispensable party,

5

notwithstanding the fact that the plaintiffs had removed all references to ATTM from their complaint. The court observed that the complaint was still "based on the core allegation that the 3G network could not accommodate iPhone 3G users, and that Plaintiffs were deceived into paying higher rates for service which could not be delivered on the 3G network." (*Ibid.*) The court found that "Plaintiffs have simply deleted references to ATTM that appeared in their previous Complaint without altering the gravamen of their allegations. These cosmetic modifications to the Complaint are unavailing. . . ." (*Ibid.*) Accordingly, the court granted Apple's motion to dismiss and ordered the MDL plaintiffs to file an amended complaint naming ATTM as a defendant.

On December 19, 2011, the MDL plaintiffs filed a fifth amended master complaint naming both Apple and ATTM as Defendants. (*In re Apple iPhone 3G Products Liability Litigation* (N.D. Cal. 2012) 859 F.Supp.2d 1084, 1088.) Both Apple and ATTM moved to compel arbitration on an individual, non-class basis. (*Id.* at pp. 1088-1089.) The court granted both motions and stayed the proceedings to allow the plaintiffs to pursue arbitration. (*Id.* at p. 1097.) The plaintiffs moved to amend the order to allow for an interlocutory appeal to the Ninth Circuit Court of Appeals, but the district court denied that motion on July 19, 2012. The district court's docket shows no subsequent litigation as of the filing of this opinion.[3]

C. *Proceedings in the State Trial Court*

After Van Zant filed her initial complaint in 2010, Apple demurred under Code of Civil Procedure section 430.10, subdivision (d), and moved to dismiss the initial complaint on the ground that ATTM was a necessary party under Code of Civil Procedure section 389. Apple urged the court to adopt the reasoning of the federal district court's rulings that ATTM was a necessary and indispensable party in the MDL proceedings. Apple argued that Van Zant's complaint was "effectively identical" to the

---

[3] We take judicial notice of the district court's docket and its order of July 19, 2012. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

6

MDL plaintiffs' complaint and that the legal issues were therefore identical in both cases. In its moving papers, Apple included the MDL third amended master complaint with a request for judicial notice. At the same time, Apple moved in the alternative to stay the proceedings pending resolution of the federal MDL proceedings. On May 19, 2011, the trial court granted the motion to stay, and the court continued the demurrer and motion to dismiss. The court also granted Apple's request for judicial notice of the MDL third amended master complaint.

In 2012, after the federal district court granted the MDL defendants' motion to compel arbitration, the state trial court lifted the stay in this case. Apple then renewed its demurrer and motion to dismiss on the same grounds previously asserted.

The trial court sustained the demurrer with leave to amend. In doing so, the court considered the federal court's rulings that ATTM was a necessary and indispensable party in the MDL. The court found that "a ruling that allows Plaintiff to proceed without ATTM would conflict with the rulings of the federal MDL court—which is the very circumstance the Court sought to avoid by staying this action in the first place." Based on the MDL complaint and Van Zant's initial complaint, the court found that "the issues of 3G network connectivity and speed are necessarily intertwined with the issue of whether the iPhone 3G was inadequate to perform 'twice as fast' as advertised." The court further found that "the iPhone does not have any speed independent of the network on which it operates." The court concluded: "Because the [MDL action and the Van Zant action] share these common issues regarding network connectivity and capabilities, ATTM has an interest relating to the subject of this action against Apple, and ATTM's absence may leave Apple subject to a risk of inconsistent obligations between this action and the arbitration involving the MDL plaintiffs. Merely excluding the MDL plaintiffs from the putative class would not eliminate the risk of conflicting rulings as to Apple on its 'twice as fast' advertising, the allegations of which implicate network connectivity and capabilities."

On September 21, 2012, Van Zant filed her first amended complaint without adding ATTM as a defendant. Apple again demurred and moved to dismiss the complaint on the same grounds previously asserted. At a hearing on the matter, the trial court stated its intent to sustain the demurrer and told Van Zant it would order her to add ATTM as a party. Counsel for Van Zant informed the court that he could not ethically and in good faith add ATTM given his belief that ATTM had not wronged Van Zant.

In a written order dated January 31, 2013, the trial court sustained the demurrer with leave to amend to add ATTM as a defendant. However, based on Van Zant's refusal to add ATTM, the court also granted Apple's motion to dismiss. The court reiterated the reasoning of its prior ruling, finding again that "the claims against Apple are necessarily intertwined with the issue of 3G connectivity, thereby necessarily implicating the operator of the only 3G network on which the iPhone 3G operated."

The record in this matter shows no evidence of any person pursuing arbitration against either Apple or ATTM in connection with the MDL proceedings. At a motion hearing in the trial court on August 17, 2012, counsel for Van Zant informed the court that none of the MDL plaintiffs had demanded arbitration. Apple's counsel stated, "We don't know who is going to arbitrate." Similarly, the trial court stated, "I can't say what's going to happen in the MDL proceeding, and I don't know whether the plaintiffs there are going to proceed in arbitration."

## II. DISCUSSION

### A. *Legal Standards*

A defendant may object to a complaint by demurrer on the ground that there is "a defect or misjoinder of parties." (Code Civ. Proc., § 430.10, subd. (d).) "In reviewing the ruling on a demurrer, ' "[w]e treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed." . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their

8

context.' " (*Countrywide Home Loans, Inc. v. Superior Court* (1999) 69 Cal.App.4th 785, 791 (*Countrywide*) [quoting (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318].)

Code of Civil Procedure section 389 (section 389) governs joinder of parties. Subdivision (a) of that provision (section 389(a)) provides:  "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.  If he has not been so joined, the court shall order that he be made a party."  A party that must be joined under this provision is deemed a "necessary" party.[4] (*Countrywide*, *supra*, 69 Cal.App.4th at p. 791.)  Because the language of section 389 tracks the language of its federal counterpart, Federal Rule of Civil Procedure 19, we may look to federal precedents applying the federal rule as a guide to application of the state statute.  (*Id.* at p. 792.)

---

[4] If a party deemed necessary under subdivision (a) cannot be made a party, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable."  (Code Civ. Proc., § 389, subd. (b).)  The parties agree that subdivision (b) is not at issue in this case.

9

When a demurrer has been sustained for a failure to join under section 389, we review the trial court's ruling for an abuse of discretion.[5] (*Countrywide*, 69 Cal.App.4th at p. 792; *People ex rel. Lungren v. Community Redevelopment Agency* (1997) 56 Cal.App.4th 868, 875.) However, " '[t]o the extent that the [trial] court's determination whether a party's interest is impaired involves a question of law, we review de novo.' " (*Ibid.* [quoting *Pit River Home and Agr. Co-op. Ass'n v. United States* (9th Cir. 1994) 30 F.3d 1088, 1098].) Such questions of law include statutory interpretations. (*County of Imperial v. Superior Court* (2007) 152 Cal.App.4th 13, 25 (*Imperial*).)

B. *ATTM is Not a Necessary Party Under Section 389(a)*

Van Zant contends the trial court erred by sustaining Apple's demurrer because ATTM is not a necessary party under section 389. We agree.

As an initial matter, we note that no party claims—and the trial court did not rule—that ATTM is a necessary party under subdivision (a)(1) of section 389. That subdivision would require joinder only if "complete relief cannot be accorded" between Apple and Van Zant in ATTM's absence. This condition does not arise here. The sole issue in this case is whether ATTM is a necessary party under subdivision (a)(2) of section 389.

1. *ATTM "Claims an Interest" Relating to the Subject of This Action*

Subdivision (a)(2) of section 389 sets forth two prongs under which a party may be deemed necessary—(a)(2)(i) and (a)(2)(ii). But both prongs are subject to the same predicate condition: that the absent party "*claims* an interest relating to the subject of the

_____

[5] The weight of the authority supports an abuse of discretion standard of review, but we would depart and apply a de novo standard when a ruling under section 389(a) requires no factfinding and is instead based largely on a conclusion of law. (See *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.* (3d Cir. 1993) 11 F.3d 399, 404.) Arguably, this case presents such an instance, but we need not resolve this issue since we would conclude the trial court erred under either standard.

10

action. . . ." (Italics added.) By contrast, the trial court ruled that ATTM "*has* an interest relating to the subject of this action." (Italics added.) Van Zant argues that under subdivision (a)(2), merely *having* an interest is insufficient; instead, the absent party must affirmatively *claim* its interest. Van Zant relies on *Hartenstine v. Superior Court* (1987) 196 Cal.App.3d 206, 222. In that case, the court found that the State of California was not a necessary party because it did not claim an interest relating to the subject of the action. Van Zant further contends that Apple cannot claim an interest on ATTM's behalf. (*Ibid.*; *Gibbs Wire and Steel Co., Inc. v. Johnson* (D. Conn. 2009) 255 F.R.D. 326, 329 [a party named in the litigation cannot assert the interest on an absent party's behalf].)

ATTM necessarily "claim[ed] an interest" in the subject of the MDL action by litigating it in federal court. And the subject of the MDL action is closely related to the subject of this action. Arguably, then, ATTM has implicitly claimed an interest in the subject of this action. Therefore, we conclude that the trial court's ruling that ATTM claimed an interest in this case did not constitute an abuse of discretion.

2. *A Disposition in ATTM's Absence Would Not Impair or Impede Its Ability to Protect Its Interests*

Under subdivision (a)(2)(i) of section 389, a party claiming an interest relating to the subject of the action may be deemed necessary if the disposition of the action in his absence may "as a practical matter impair or impede his ability to protect that interest." This provision " 'recognizes the importance of protecting the person whose joinder is in question against the practical prejudice to him which may arise through a disposition of the action in his absence.' " (*Countrywide*, *supra*, 69 Cal.App.4th at p. 793 [quoting Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc. (1973 ed.) § 389, p. 224].) Although the trial court made no ruling on this basis, Apple contends ATTM is a necessary party under this subdivision. Apple argues that a disposition in this action in ATTM's absence would impair or impede ATTM's interest in defending claims raised in the MDL-related arbitration. Relying on *Imperial*, *supra*, 152 Cal.App.4th 13, Apple

11

claims that ATTM's interest may be impaired because evidence or findings in this case could conflict with evidence or findings in the MDL arbitrations. Apple also contends that "adverse findings about ATTM in this case could prompt additional plaintiffs to file similar claims against ATTM."

Apple's arguments fail for two reasons. First, nothing in the record evidences any pending or ongoing arbitration proceedings against ATTM concerning the iPhone 3G. Indeed, it appears such proceedings are unlikely. The federal district court granted the MDL defendants' motion to compel arbitration on an individual, non-class basis such that MDL plaintiffs would be required to enter individually into costly arbitration with Apple and ATTM. Given the limited recovery of damages available on an individual basis, the pursuit of arbitration is hardly worthwhile. Counsel for Apple speculated that an individual plaintiff might wish to complete arbitration for the right to appeal from the district court's orders, but counsel was unaware of any plaintiff actually doing so.

Second, Apple does not claim, and cannot claim, that findings or rulings in this action would have any preclusive effect on ATTM. In the absence of any preclusive effect, the mere possibility of unfavorable evidentiary findings is insufficient to require joinder. "The mere fact [. . .] that Party A, in a suit against Party B, intends to introduce evidence that will indicate that a non-party, C, behaved improperly does not, by itself, make C a necessary party. Given the vast range of potential insults and allegations of impropriety that may be directed at non-parties in civil litigation, a contrary view would greatly expand the universe of Rule 19(a) necessary parties." (*Pujol v. Shearson American Exp., Inc.* (1st Cir. 1989) 877 F.2d 132, 136.)

Apple's reliance on *Imperial* is unavailing. *Imperial* primarily concerned the application of subdivision (b) section 389, not subdivision (a). (*Imperial*, *supra*, 152 Cal.App.4th at p. 36.) Furthermore, nothing in *Imperial* supports Apple's contention that the mere possibility of conflicting evidence or conflicting findings is sufficient to "impair or impede" an absent party's interest for the purpose of requiring joinder. To the

contrary, *Imperial* underscores the pertinent language of subdivision (a)(2): it is "the *disposition* of the action" the court must consider—not potential rulings or findings—in determining whether the absent party's interest may be impaired or impeded. (Italics added.)

*Imperial* concerned actions brought by Imperial County to challenge a water transfer agreement between the San Diego County Water Authority and the Imperial Irrigation District. (*Imperial*, *supra*, 152 Cal.App.4th at p. 18.) The trial court sustained a demurrer for failure to join two indispensable parties. Those parties—California water districts with certain rights to the water at issue—stood to acquire a large amount of water under the challenged transfer agreement. (*Id.* at p. 22.) The county petitioned for a writ of mandate, and the Court of Appeal denied the writ. The trial court found that a judgment in favor of the county would prejudicially impact the absent water districts because, among other consequences, " 'they would potentially loose [sic] 100,000 acre-feet per year of water intended for them—water sufficient to serve at least 200,000 households.' " (*Id.* at p. 35.) Apple points to no such loss facing ATTM from a judgment or disposition in this action. Accordingly, we find this argument without merit.

3. *There Is No Substantial Risk of Multiple or Inconsistent Obligations*

Under the second prong of subdivision (a)(2) of section 389, a party claiming an interest relating to the subject of the action may be deemed necessary if the disposition of the action in his absence may "leave any of the persons already parties subject to a *substantial risk* of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." (Italics added.) The trial court below relied on this provision to sustain the demurrer, finding that "ATTM's absence may leave Apple subject to a risk of inconsistent obligations between this action and the arbitration involving the MDL plaintiffs." Similarly, the court found a "risk of conflicting rulings as to Apple on its 'twice as fast' advertising, the allegations of which implicate network connectivity and capabilities."

13

Neither the trial court nor Apple identifies any potential source of inconsistent obligations other than arbitrations that may arise in the MDL action. As already noted above, nothing in the record evidences any pending or ongoing arbitration against ATTM, and the possibility of future arbitration is purely speculative. (*In re Torcise* (11th Cir. 1997) 116 F.3d 860, 866 [purely speculative claims of multiple exposure do not pose substantial risk of multiple, inconsistent obligations under Federal Rule of Civil Procedure 19].) Such a speculative risk is not a "substantial risk." "[A] 'substantial risk' means more than a theoretical possibility of the absent party's asserting a claim that would result in multiple liability. The risk must be substantial as a practical matter." (*Union Carbide Corp. v. Superior Court* (1984) 36 Cal.3d 15, 21.)

Even if arbitration proceedings were pending or ongoing in the MDL action, inconsistent *rulings* are not the same as inconsistent *obligations*. (*Bacardí Intern. Ltd. v. V. Suárez & Co., Inc.* (1st Cir. 2013) 719 F.3d 1, 12.) " '[I]nconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident.' [Citation.] In contrast, inconsistent adjudications or results occur when a party wins on a claim in one forum and loses on another claim from the same incident in another forum." (*Ibid.* [quoting *Delgado v. Plaza Las Americas, Inc.* (1st Cir. 1998) 139 F.3d 1, 3].) Because the putative class in this action excludes "all individuals pursuing arbitration against ATTM," Apple can fully comply with the state court's orders while simultaneously complying with any obligations arising out of any MDL-related proceedings. Accordingly, the possibility of arbitration presents no risk of inconsistent obligations for Apple.

4. *The Trial Court's Findings Went Beyond the Four Corners of the Complaint*

Apple relies heavily on the trial court's findings that "the issues of 3G network connectivity and speed are necessarily intertwined" with the iPhone's performance, and that "the iPhone does not have any speed independent of the network on which it operates." We find no basis in the record to support these findings. The trial court

14

apparently based these findings on the MDL complaints.  But we are obligated to treat a demurrer as "admitting all material facts properly pleaded."  (*Countrywide*, *supra*, 69 Cal.App.4th at p. 791.)  "[P]roperly pleaded" refers to the pleadings *in this case*, not to complaints filed by different plaintiffs in a separate proceeding.

In this case, Van Zant alleges that the iPhone 3G's performance deficiencies have nothing to do with ATTM's network.  She claims that the problem is inherent in the software and hardware of the iPhone 3G itself.  Accepting this claim as true—as we must—the issue of the iPhone 3G's performance is not "necessarily intertwined" with the functioning of ATTM's network.  Van Zant's claim is analogous to a claim that her television gets poor reception solely because its cable input port is defective; this claim would not require her to sue her cable provider as a necessary party.  At its core, Van Zant's complaint is no different from any other claim for defectively manufactured technology.  (See, e.g., *Hewlett-Packard Co. v. Superior Court* (2008) 167 Cal.App.4th 87, 89 [class action by computer buyers against manufacturer for selling defective computers].)

As to the finding that "the iPhone does not have any speed independent of the network," this also contradicts the allegations in the complaint.  The complaint alleges that iPhone 3G users may "browse the Internet, either on the wireless network *or through a WiFi connection that does not require connectivity to the wireless network*."  (Italics added.)  If the iPhone 3G can operate without ATTM's network, it necessarily has some "speed independent of the network."

Apple cites to Van Zant's initial complaint, which alleged that the iPhone 3G suffered from "poor connectivity" to ATTM's network.  But the initial complaint never claimed that ATTM bore any fault or liability for the iPhone 3G's performance.  To the contrary, that complaint specifically alleged that the iPhone 3G's "poor connectivity is caused either by hardware flaws—the iPhone 3G demands too much power to operate routinely at 3G bandwidth levels and the iPhone 3G lacks sufficient sensitivity or ability

15

to consistently access 3G network connectivity—or software flaws in the programmed algorithms, or a combination of the two. *Such flaws are separate and apart from the operation of the 3G network*." (Italics added.)

5. *The Federal District Court's Rulings Are Inapplicable in This Proceeding*

The trial court attached undue significance to the pleadings and rulings in the MDL proceedings. Contrary to Apple's assertion, Van Zant's complaint departs from the MDL allegations in several important ways. The MDL plaintiffs—who sued both Apple and ATTM—alleged that *both* defendants had falsely marketed the iPhone 3G. The MDL plaintiffs claimed that the performance deficiencies stemmed partly from defects in ATTM's network, not solely from the iPhone itself. (*In re Apple iPhone 3G Products Liability Litigation*, *supra*, 728 F.Supp.2d at p. 1068.) The MDL plaintiffs specifically claimed that Apple and ATTM "engaged in a campaign" and "acted in concert" to market the iPhone misleadingly. (*Ibid.*) For these reasons, the argument that ATTM was a necessary party in the MDL proceedings is substantially more persuasive than Apple's arguments here. (See *Plymouth Yongle Tape (Shanghai) Co., Ltd. v. Plymouth Rubber Co., LLC* (D. Mass. 2009) 683 F.Supp.2d 102, 117 [customer was necessary and indispensable party to claim of conspiracy where customer conspired with manufacturer].)

Even if ATTM shared some fault for the iPhone 3G's allegedly poor performance, " 'It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.' " (*Countrywide*, *supra*, 69 Cal.App.4th at p. 796 [quoting *Temple v. Synthes Corp.* (1990) 498 U.S. 5, 7].) "As the legislative history of section 389 indicates, the 'definition of persons to be joined is not couched in terms of the abstract nature of their interests—"joint," "[u]nited," "separable," or the like. . . . It should be noted particularly . . . that the description is not at variance with the settled authorities holding that a tortfeasor with the usual "joint-and-several" liability is merely a *permissive* party to an action against another with like liability. . . . Joinder of these tortfeasors

16

continues to be regulated by . . . [sections 378 and 379 of the Code of Civil Procedure].' " (*Ibid.* [quoting Cal. Law Revision Com. com., 14 West's Ann. Civ. Proc. Code, *supra*, § 389, p. 224], italics in original.) "Sections 378 and 379 address the permissive joinder of plaintiffs and defendants, respectively. 'Thus . . . the doctrine of joint and several liability precludes characterizing a likely defendant as a party necessary to the plaintiff's action. . . .' " (*Id.* at p. 797 [quoting *Singer Co. v. Superior Court* (1986) 179 Cal.App.3d 875, 892].)

For these reasons, we hold that ATTM is not a necessary party under section 389. The trial court's ruling to the contrary constituted an abuse of discretion. The trial court thereby erred in sustaining the demurrer and granting the motion to dismiss. Accordingly, we will reverse the judgment.

### III. DISPOSITION

The judgment is reversed. On remand, the trial court shall vacate its January 31, 2013 order sustaining Apple's demurrer and granting Apple's motion to dismiss. The trial court shall enter a new and different order overruling the demurrer and denying the motion to dismiss on the ground that Apple is not a necessary party under Code of Civil Procedure section 389, subdivision (a).

17

_____
MÁRQUEZ, J.

We concur:

_____
RUSHING, P. J.

_____
PREMO, J.

Van Zant v. Apple Inc.
H039354

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No.: 1-10-CV-177571 |
| Trial Judge: | The Honorable<br>James P. Kleinberg |
| Attorneys for Plaintiff and Appellant<br>Ingrid Van Zant: | Alshuler Berzon LLP<br>Jonathan Weissglass<br>P. Casey Pitts |
| | Branstetter, Stranch & Jennings, PLLC<br>Michael G. Stewart<br>J. Gerard Stranch, IV<br>James G. Stranch, III |
| Attorneys for Defendant and Respondent<br>Apple Inc.: | Morrison & Foerster LLP<br>Miriam A. Vogel<br>Penelope Preovolos<br>Suzanna Brickman |

Van Zant v. Apple Inc.
H039354