Filed 1/29/15  In re J.H. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re J.H., a Person Coming Under the Juvenile Court Law. | B256522 |
| | (Los Angeles County Super. Ct. No. CK89625) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JONATHAN H. et al., Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County.  D. Zeke Zeidler, Judge.  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant Jonathan H.

Christy C. Peterson, under appointment by the Court of Appeal, for Defendant and Appellant Ashley H.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

* * * * * *

Jonathan H. (father) appeals the termination of his parental rights over his biological son, J.H. He acknowledges that he first appeared nearly three years after J.H's birth and after the conclusion of 18 months of reunification services to Ashley H. (mother), but says his late arrival in the dependency proceedings was mother's fault. Specifically, he contends that (1) the juvenile court erred in terminating father's parental rights without a showing that placing J.H. with him would be detrimental, (2) the juvenile court did not sufficiently ask mother about J.H.'s parentage, and (3) the Department of Family and Children's Services (Department) did not use reasonable diligence in tracking him down and giving him notice of the proceedings. We conclude there was no error, and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Mother gave birth to J.H. in August 2011. One month later, the Department detained J.H. and filed a petition pursuant to Welfare and Institutions Code[1] section 300 alleging mother abused alcohol and marijuana, and suffered from emotional problems.

Whether by design or by accident, mother made it difficult for the Department to identify J.H.'s father. Before J.H.'s birth, mother said she was raped by a "black guy named Jonathan" in a group home in Lancaster. Immediately after the birth (and ostensibly based on the baby's physical appearance), mother expressed some uncertainty as to the father's identity, but eventually and definitely named the father as David I. (David) and provided his last name and telephone number. Mother thereafter refused to discuss the issue with the Department. The Department eventually notified David. In February 2014, mother took the stand and testified that the father was *not* David, and was possibly a man named "Jonathan" whose last name she did not know because she had just met him at a party. Mother recounted that she had visited "Jonathan's" parents' house, but they could not locate him. Within a month, the Department used the information mother provided about "Jonathan's" parents to locate father; he appeared in the

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

dependency proceedings while in custody for misdemeanor and felony charges. DNA testing confirmed father was J.H.'s biological father.

In the meantime, J.H. had been placed with possible foster parents, Mr. and Mrs. L, within weeks of his birth. After mother pled no contest to the allegations in the Department's petition, the juvenile court ordered reunification services for mother and J.H. Eighteen months later, mother was only in partial compliance with her reunification case plan and the juvenile court terminated services and set the matter for a permanency hearing under section 366.26. The Department recommended that Mr. and Mrs. L be permitted to adopt J.H. because he had been with them nearly since birth; his developmental needs were being met; and J.H. had developed a close relationship with the foster parents.

On the day scheduled for the section 366.26 hearing, father appeared and filed a section 388 petition asking the juvenile court to postpone the section 366.26 hearing and instead to consider initiating reunification services with father. The court recognized father was J.H.'s biological father, but (1) denied reunification services because he was not J.H.'s "presumed father" (§ 361.5, subd. (a)), and (2) denied the section 388 petition because restarting the entire reunification process was not in J.H.'s best interest. The next day, father filed a second, identical section 388 petition and a motion attacking the Department's efforts to identify him and apprise him of the proceedings under *Ansley v. Superior Court* (1986) 185 Cal.App.3d 477. The juvenile court denied both, explaining as to the second motion that father had made "no showing that . . . due diligence without a birth date [was] likely to [have] locate[d]" him. The court proceeded with the section 366.26 hearing; found J.H. adoptable; and terminated mother's and father's parental rights.

Father and mother timely appealed.[2]

---

**2** Through her counsel, mother filed a brief raising no issues pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835, but seeking reinstatement of her parental rights should we award father relief on appeal.

**DISCUSSION**

**I.      Father's burden to halt termination of parental rights**

A man's right to participate in a dependency proceeding regarding a child depends upon whether (1) he is someone the mother alleges to be the father (a so-called "alleged father"), (2) he is proven to be the biological father, or (3) he is the "presumed father" within the meaning of the Uniform Parentage Act, Family Code, § 7600 et seq.  (See *In re M.C.* (2011) 195 Cal.App.4th 197, 211 [dependency proceedings incorporate Uniform Parentage Act].)  Where, as here, the mother is unmarried, a man is the "presumed father" only if he has received the children into his home and openly held the child out as his own.  (Fam. Code, § 7611, subd. (d).)  "Presumed fathers" have far greater rights than alleged or biological fathers.  (*Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 595-596.)  As is pertinent here, a "presumed father's" parental rights cannot be terminated unless the juvenile court finds, by clear and convincing evidence, that awarding custody to the father would be detrimental to the child.  (*In re T.G.* (2013) 215 Cal.App.4th 1, 20.)  However, a biological father's parental rights can be terminated—if he first appears after the 12-month reunification services period for children under the age of three is over (§ 361.5, subds. (a)(1)(B), (C))—unless the father, in a section 388 petition, shows changed circumstances or new evidence that the best interest of the child favors restarting the reunification process with an eye toward placement with the father.  (*In re Zacaria D.* (1993) 6 Cal.4th 435, 454 (*Zacaria D.*).)  *In re Vincent M.* (2008) 161 Cal.App.4th 943, 947 (*Vincent M.*) held that *Zacaria D.*'s requirement of a section 388 petition applies even if the mother's conduct prevented the father from getting involved sooner.

Father argues that this differential treatment of biological fathers violates due process and equal protection when the reason for the father's late arrival is the mother's misdirection.  Father acknowledges that *Vincent M.* governs his case, but argues that it is inconsistent with our Supreme Court's decision in *Adoption of Kelsey S.* (1992) 1 Cal.4th

816 (*Kelsey S.*). *Kelsey S.* held that it was unconstitutional to deny a man the presumed father's right to object to a voluntary adoption absent a judicial finding of parental unfitness when the denial of that right sprang solely from the mother's refusal to let the child live with the man (which precluded him from becoming the "presumed father"). (*Id.* at p. 849.) The validity of *Vincent M.* is a question of law we review de novo. (*Van Zant v. Apple Inc.* (2014) 229 Cal.App.4th 965, 974.)

We reject father's argument for two reasons.

First, father has forfeited this argument. A key premise of the argument father now advances is that he is a so-called *Kelsey S.* father (that is, a father who was denied parental rights due to the mother's conduct), such that his parental rights can be terminated only upon a showing of detriment. (We will assume for purposes of our analysis that *Kelsey S.* fathers will be accorded the same rights as "presumed fathers" under the dependency statutes, even though this assumption is a debatable one.) But father never informed the juvenile court he was seeking to qualify as a *Kelsey S.* father. This amounts to a forfeiture. (*In re Elijah V.* (2005) 127 Cal.App.4th 576, 582.)

Father also presented no evidence to support his claim of *Kelsey S.* fatherhood. *Kelsey S.* empowers a man who is not a "presumed father" to object to adoption only if he "promptly comes forward and demonstrates a full commitment to his parental responsibilities—emotional, financial and otherwise." (*Kelsey S.*, *supra*, 1 Cal.4th at p. 849.) In this case, father did not come forward promptly as he knew he was intimate with mother nearly four years before he appeared in the dependency proceedings. (E.g., *In re Emily R.* (2000) 80 Cal.App.4th 1344, 1354 (*Emily R.*) [father has "inquiry notice that he may have fathered a child as a result of his sexual relationship" with a woman]). Father otherwise made no showing of his emotional or financial wherewithal to be a custodial parent. Father's failure to adduce evidence on the factual predicate of this claim—on which he bears the burden of proof (*Adoption of A.S.* (2012) 212 Cal.App.4th 188, 209)—is yet another reason to conclude that father should not be allowed to raise it for the first time on appeal.

5

Second, father's claim is in any event unpersuasive on its merits. Although both *Kelsey S.* and *Vincent M.* involved mothers who engaged in conduct that the fathers contended prejudiced their parental rights, the seemingly different outcomes of these cases sit comfortably beside one another. *Kelsey S.* was an adoption case; the father's inability to qualify as a "presumed father" meant he had *no* rights—either to consent to the adoption or to have the adoption over his objection based on a finding of his unfitness. (*Kelsey S.*, *supra*, 1 Cal.4th at pp. 821-822.) *Kelsey S.* held that it was arbitrary under due process (and lacked a rational basis under equal protection) to make the total loss of a father's parental rights turn on something as potentially mercurial as the mother's wishes.

*Vincent M.* is a dependency case. Children within the juvenile court's dependency jurisdiction have been the victims of abuse or neglect, or are at substantial risk of such victimization. (*Zacaria D.*, *supra*, 6 Cal.4th at p. 446.) As to such children, the state has a long-recognized interest in "'prevent[ing] children from spending their lives in the uncertainty of foster care,' [citation]" in having "'time-limited and clearly focused protective and/or reunification services,'" and in placing them in "'permanency planning at the earliest possible stage . . .' [citation]." (*Ibid.*, italics omitted.) In this situation, unlike *Kelsey S.*, there is at a minimum a legitimate and rational state interest—aside from the mother's interference—in requiring a greater showing to interrupt permanency planning and to effectively hit the "reset button" after reunification services have concluded.

We recognize that enforcing this rule has an element of unfairness to it when the father's late entry into the case is due in part to a mother's efforts at obfuscation, but that unfairness is blunted in this context by the father's ability to ask his sexual partners about any pregnancies or births and by the fact that fathers still retain the right to prove that restarting the reunification process is in the child's best interest. More to the point, this mitigated unfairness does not render *Vincent M.*'s rule arbitrary or without legitimate purpose.

6

Because father does not challenge the juvenile court's finding that the best interest of J.H. favors his placement with Mr. and Mrs. L, and because that finding is supported by substantial evidence (*In re G.L.* (2014) 222 Cal.App.4th 1153, 1166), we affirm the juvenile court's denial of father's section 388 petition.

## II.  Notice

Father mounts a two-pronged attack on the notice provided to him.  He first argues that the juvenile court did not comply with its statutory duty to inquire into the identity of all presumed or alleged fathers at the initial detention hearing of J.H.  (§ 316.2, subd. (a).)  However, the juvenile court made such an inquiry; the unhelpfulness of mother's answers does not somehow undo the court's compliance with its duties.

Father asserts that the Department did not exercise due diligence in identifying him.  A child welfare agency is required to act with reasonable diligence to locate a missing parent.  (*David B. v. Superior Court* (1994) 21 Cal.App.4th 1010, 1019.)  When the thoroughness of the Department's inquiry is challenged, our focus is on what has been done to try to locate a parent rather than what might have been done differently.  (*People v. Diaz* (2002) 95 Cal.App.4th 695, 706.)

In this case, mother identified David, and the Department notified him; when mother changed her story and identified "Jonathan" (and pointed out where his parents lived), the Department notified father within a month.  Father contends that the Department should have ignored mother's then-definitive assertion that David was the father and instead conducted a dual-track investigation of a "black man" named "Jonathan."  But father does not explain how the Department was to conduct such a search without a last name, a birthdate or an address.  Father also offers no evidence that the Department would have located him by his commonplace first name and his race.  (See *Emily R.*, *supra*, 80 Cal.App.4th at p. 1353 [alleged father bears the burden of showing search measure would have had some chance of success].)  To the extent father is challenging personal jurisdiction, he has forfeited this contention by appearing generally and without objection below.  (See *In re Gilberto M.* (1992) 6 Cal.App.4th

7

1194, 1198.)

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT

We concur:


_____, P. J.

BOREN


_____, J.

ASHMANN-GERST